(60 South. 685.)

No. 19,284.

POLICE JURY OF PARISH OF LA-
FOURCHE et al. v. TERREBONNE
LAND CO., Limited, et al.

SAME v. SOUTH LOUISIANA LAND CO.
et al.

(Jan. 6, 1913. Rehearing Denied Feb. 3, 1913.)

*(Syllabus by the Court.)*

PUBLIC LANDS (§ 61*)—SWAMP LAND—TRANS-
FER—STATUTES.

The Legislature, by Act 106 of 1878, for the purpose of draining and reclaiming swamp and overflowed lands in the parishes of La-fourche and Terrebonne, donated the same to the police juries of said parishes, on the express condition, however, that if the work was not prosecuted to completion within 10 years, or as soon thereafter as practicable, the donation was to be null and void and of no effect. The act authorized the police juries. to levy a special tax of not more than one cent on the dollar on all lands situated within the drainage district.

The act provided for the creation of a board of commissioners, in which was vested the power to sell the lands and to appropriate the proceeds of sale to the work of reclamation, and the surplus to the refunding of taxes assessed and paid under the provisions of the act.

The next year the Constitution of 1879 was adopted; and article 209 of that instrument, by limiting parochial taxation for all purposes to 10 mills on the dollar, prohibited the levy and collection of the special taxes authorized by Act 106 of 1878. By reason of this constitutional prohibition, the police juries of the parishes of Lafourche and Terrebonne and the board of commissioners, in January, 1883, abandoned the further prosecution of the work of reclamation.

By Act 97 of 1890, the Legislature granted the same swamp lands to the board of commissioners of the Atchafalaya Basin Levee District, and subsequently, as provided by the act, formal deeds of conveyance were executed to said board, and duly recorded.

The lands in controversy were sold by said board of commissioners, and have passed by a chain of duly recorded titles to the *defendants.*

*Held,* that Act 106 of 1878 was rendered inoperative by article 209 of the Constitution of 1879, and that the forfeiture of the donation by legislative enactment was operated by Act 97 of 1890.

*Held,* further, that under the provisions of Act 106 of 1878, no legal title vested in the police juries of the parishes of Lafourche and Terrebonne.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 192–213; Dec. Dig. § 61.*]

Appeal from Twentieth Judicial District Court, Parish of Lafourche; Whitmell P. Martin, Judge.

Actions by the Police Jury of the Parish of Lafourche and others against the Terrebonne Land Company, Limited, and others, and against the South Louisiana Land Company and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Howell & Caillouet, of Thibodaux, and Suthon & Wurzlow, of Houma, for appellants. Foster, Milling, Brian & Saal, of Franklin, Hall, Monroe & Lemann, of New Orleans, Harris Gagne, of Houma, and J. A. O. Coignet, of Thibodaux, for appellees.

LAND, J. These suits were instituted under Act No. 38 of 1908, providing a form of action to establish title to real estate, where neither of the claimants of record are in actual possession of the land in dispute.

Plaintiffs assert title to many thousands of acres of swamp land by virtue of a grant from the state of Louisiana to the police juries of the parishes of Lafourche and Terrebonne, evidenced by Act No. 106 of 1878.

Defendants assert title from the state of Louisiana through the Atchafalaya Basin Levee District created by Act No. 97 of 1890.

Defendants set up a number of exceptions, pleas, and defenses, and a large mass of evidence was adduced on the trial below. The judge a quo reviewed the law and facts of the case in a lengthy and well-considered opinion, and rendered judgment in favor of the defendants. The plaintiffs have appealed.

Act No. 38 of 1908 was intended to provide a particular form of action to adjudicate titles to real estate, "where neither of the claimants are in actual possession of the land." In such an action the judge is called upon to decide, "which of the claimants are the owners of the land in dispute."

The first question in the case is whether

the plaintiffs ever had a legal title to the lands in controversy, and if this question is answered in the affirmative, the next is whether such title has ever been divested.

The state of Louisiana, by Act No. 106 of 1878, for the purpose of draining and reclaiming the lands lying between the Bayous Lafourche and Terrebonne, in the parishes of Lafourche and Terrebonne, appropriated in kind, donated, and ceded to the police juries of said parishes all the swamp and overflowed lands, belonging to the state, lying and being between the said bayous, relinquishing the title to said parishes on the terms and conditions expressed in the act,

"provided that in case the work of reclaiming these lands is not commenced within twelve months after the passage of this act and conducted continuously, thenceforward, as rapidly as the funds raised by taxation to be hereinafter provided for, and the sale of reclaimed lands will permit, for the term of ten years or until the work of reclaiming said lands is completed, then and in that case, this donation shall be null and void and of no effect."

The act provided for the creation of a "local board of swamp land commissioners," composed of five members, one to be appointed by the Governor, and two by each of said parishes. The act provided for the appointment by the board of a bonded secretary and treasurer, who was to receive and disburse all taxes levied and collected and all proceeds of the sales of lands under the provisions of the act. Full and complete powers were vested in the board to sue and be sued, to contract, to sell the donated lands in convenient tracts, to cause surveys and levels, and all work necessary and proper for drainage and reclamation, to be made. It was further provided that, when the work of reclamation was completed, any surplus in the treasury, and all amounts subsequently derived from the sale of reclaimed lands, should be devoted to refunding the taxes assessed and paid under the provisions of the act. The police juries were authorized to

levy a tax not exceeding 1 per cent. annually on all lands lying between said bayous for the purpose of draining and reclaiming the lands described in the act.

The board of commissioners was organized, and, with the aid of the 1 per cent. special tax, commenced and prosecuted the work of drainage and reclamation contemplated by the statute until January, 1883, when the work was abandoned, because said tax was declared unconstitutional by the Supreme Court of the state in the case of State ex rel. Morgan's Louisiana & Texas R. R. & S. S. Co. v. Cage, Sheriff, 34 La. Ann. 506. In that case the court said:

"It is clear that such tax does come within the prohibition of article 209 of the Constitution, restricting the power of parochial taxation to 10 mills on the dollar *for all purposes.* But the power to levy the tax is not absolutely abrogated by the terms of the Constitution, under the provisions of which, the parish of Terrebonne, with proper legislative authority, can raise the tax necessary to continue this work of public improvement, either under article 209 or article 242."

Article 209 of the Constitution of 1879, after limiting the rate of parochial taxation for all purposes to 10 mills, provided that for the purpose of erecting and constructing works of public improvement the rate of taxation might be increased by a majority vote of the taxpayers of the parish. The case supra was decided in April, 1882. The board of swamp land commissioners held their last meeting in January, 1883, and never resumed the work of reclaiming the land embraced in the conditional donation of 1878. The police juries of the two parishes took no steps whatever to raise the special taxes necessary to continue work, under the provisions of articles 209 or 242 of the Constitution of 1879, as suggested by the Supreme Court, but abandoned the incomplete work of drainage and reclamation after the expenditure of some $15,000. None of the lands in controversy were reclaimed.

In 1890 the Legislature, by Act No. 97 of

that year, created the "Atchafalaya Basin Levee District," embracing that portion of the parish of Lafourche including the lands in controversy. Act No. 97 of 1890 granted, bargained, donated, conveyed, and delivered unto the levee board of said district—,

"all lands belonging to the state of Louisiana, whether granted by Congress to the state or otherwise, and embraced within said levee district."

The act contains the direction that the state auditor and the registrar of the state land office shall convey by proper deeds, in the name of the state of Louisiana, the lands granted, when requested to do so, by the levee board or the president thereof, and provides that such conveyances shall be recorded, and, when so recorded,

"the title and possession to such lands shall henceforth vest absolutely in said board of levee commissioners, who shall have power and authority to sell, mortgage, pledge or otherwise dispose of such lands at such time, in such manner, and for such prices as the said board shall deem proper."

The lands in controversy were duly certified and transferred to the said levee board pursuant to Act No. 97 of 1890, and the deeds were duly recorded in the parish of Lafourche.

Defendants derive title from the levee board aforesaid; and the trial judge found that up to the time of the institution of the suit the defendants had expended over $300,000 in draining and reclaiming the lands involved in this litigation.

After 1883, the plaintiffs asserted no claims to the lands in dispute. In 1908 the question of the title to these lands arose for the first time, and the police jury of the parish of Lafourche transferred to the Terrebonne Land Company whatever title it might have to lands situated between Bayou Lafourche and Bayou Terrebonne by virtue of Act 106 of 1878. The consideration of the transfer was the construction of a canal costing about $15,000, which was afterwards accepted by said police jury.

Act No. 106 of 1878 evidences a grant for the purpose of draining and reclaiming swamp and overflowed lands lying between Bayous Lafourche and Terrebonne, in the parishes of Lafourche and Terrebonne. The grant was made to the police juries of said parishes on certain terms and conditions, failing which the donation was to become null and void and of no effect. In order to carry out the purpose of the statute, said police juries were authorized to levy a tax, not exceeding 1 per cent. annually, on all lands between said bayous. The only other authority granted to the police juries of each parish was to appoint four of the five swamp land commissioners, to remove the members appointed by them respectively, and to fill vacancies for the unexpired term. All powers of administration, control, and alienation conferred by the act were vested in the local board of swamp land commissioners. The proceeds of all taxes collected and of sales made under the provisions of the statute were to be held by the secretary and treasurer of the board as a trust fund, to be applied, exclusively, to the work of drainage and reclamation. It was further provided as follows:

"Any surplus which may remain in the treasury of the said board when the work of reclamation is completed, and all amounts subsequently derived from the sale of lands reclaimed hereunder, shall be devoted to refunding the taxes assessed and paid under the provisions of the act."

An analysis of the provisions of Act 106 of 1878 leads to the following conclusions:

The grant was made by the state of Louisiana to the governing bodies of two of its parishes for the sole purpose of draining and reclaiming swamp and overflowed lands within a certain territory.

The grant was to become null and void and of no effect in the event the work was not

begun and continuously prosecuted until the lands were reclaimed.

The only means provided for the initiation and prosecution of the work was an annual tax not exceeding 10 mills on the dollar to be levied on all the lands within said territory.

Lands as reclaimed were to be sold by the board of commissioners, and the proceeds of sale used, as far as necessary, for the completion of the work, and any surplus remaining and all amounts subsequently derived from the sale of lands were to be used in refunding the taxes assessed and paid under the provisions of the act.

The Constitution of 1879 so restricted the power of parochial taxation as to render it legally impossible for the police juries to levy and collect the special taxes authorized by Act 106 of 1878. Article 209 of that instrument withdrew the power of special taxation conferred by said act, and by so doing rendered the execution of its provisions impracticable.

This result was recognized by the police juries and board of commissioners, and the further prosecution of the work of reclamation was abandoned.

In 1890 the Legislature granted the same swamp lands to the Atchafalaya Basin Levee District, and in due course the state auditor and the registrar of the state land office conveyed said lands by deeds to the board of commissioners of the said levee district. Under the provisions of Act 97 of 1890, the registry of such deeds vested an absolute title and possession in said board of commissioners.

Our conclusion is that Act 106 of 1878 was rendered inoperative by article 209 of the Constitution of 1879. This was recognized in the case of Morgan's L. & T. R. R. v. Cage, supra, where the court pointed out that the police juries, with legislative sanction, might be authorized, under article 209 or article 242, to levy special taxes by the majority vote of the property taxpayers, for the purpose of continuing the work of drainage and reclamation as provided by Act 106 of 1878. The right of the sovereign to withdraw the power of taxation conferred by that statute was affirmed in the case just cited. Instead of seeking a legislative sanction to levy special taxes under the Constitution of 1879, the police juries and board of commissioners abandoned the enterprise in January, 1883.

The present police juries of the same parishes seek in this litigation to be decreed the *owners* of all the swamp lands described in Act 106 of 1878. The act, which is their alleged title, appropriated, donated, and ceded the lands for a particular public purpose, but on condition that, if the public purpose was not accomplished, the donation should be null and void and of no effect. It is admitted that the condition has never been fulfilled. It follows that plaintiff's title, if it has not been forfeited, is subject to the condition imposed by Act 106 of 1878; that is, to prosecute and complete the work of reclamation of the swamp lands in controversy. As the title cannot be separated from the condition, and the condition has become impossible of performance, the grant can never ripen into a legal title.

We are further of the opinion that the grant was forfeited by Act 97 of 1890, and the conveyance of the same lands to the Atchafalaya Basin Levee District. The grant in question was not made to another sovereign, as were the swamp land grants of 1849 and 1850 by Congress to Louisiana and other states. The grant was not made to a corporation, quasi public or private, or to particular individuals. The grant was made by the state of Louisiana to two of her subordinate political agencies, for the purpose of constructing certain public works. The grant was to become null and void and of no effect

if its conditions were not fulfilled. It is well settled that the forfeiture of the grant in a case of this kind may not only be made by direct legislation, but by any public assertion by legislative act of the ownership of the state, after default of the grantee—such as an act resuming control of the property and appropriating it to particular uses, or granting it to others to carry out the original object. Farnsworth et al. v. Minn. & Pac. R. R. Co., 92 U. S. 66–67, 23 L. Ed. 530; Schulenberg v. Harriman, 21 Wall. 44, 22 L. Ed. 551; U. S. v. De Repentigny, 5 Wall. 211, 18 L. Ed. 627.

We are lastly of the opinion that, under the provisions of Act No. 106 of 1878, no legal title passed, or was intended to pass, to the police juries of the parishes of Terrebonne and Lafourche. If all the provisions of the act had been executed, the reclaimed lands belonging to the state would have been sold to refund the taxes paid by the landowners of the district. The power to sell, hypothecate, or otherwise dispose of the swamp land in question was vested in the board of commissioners, and not in the police juries, who figured as nominal donees or grantees, without any of the rights of ownership.

Judgment affirmed.