TATUM, A MINOR, ETC. *v.* LANCE, et al.

No. 41342          February 15, 1960          117 So. 2d 795

*Bell & Gore,* Grenada, for appellants.

*Carothers & Fedric,* Grenada, for appellees.

158

Holmes, J.

James David Tatum, a minor, suing by his next friend and father, William D. Tatum, Jr., brought this suit in the Circuit Court of Grenada County against Ellis Lance and his wife, Louise Lance, seeking to recover damages for personal injuries alleged to have been suf-

fered by the said James David Tatum as the result of having been hit in the eye by a shot fired from a BB gun by David Lance, the minor child of the said Ellis Lance and Louise Lance. At the conclusion of the evidence introduced on behalf of the plaintiff below, the defendants below moved the court for a directed verdict and said motion was sustained and judgment was accordingly entered dismissing the suit of the plaintiff. From this judgment the appellant, who was the plaintiff below, prosecutes this appeal.

The evidence is undisputed. The injuries sustained by the appellant were inflicted on January 28, 1958, at which time the said James David Tatum and David Lance were each seven years of age. Each lived with his respective parents in Sunnycrest Subdivision, a residential area located approximately three miles south of the corporate limits of Grenada. The two families lived a block or more apart and each of the said children attended the public schools in Grenada and were transported to and from school by school bus. On the day in question, both of said children had attended school. James David Tatum had carried to school with him on that day a small toy motorcycle. As they were returning to their homes on the school bus on the day in question, David Lance in some way got possession of the toy motorcycle and told the Tatum child that he could get the toy if he would come to his home for it. Both Mr. and Mrs. Lance, the parents of David Lance, worked. Mrs. Lance worked in the day time and Mr. Lance worked at night. The children were never left at home alone in the absence of Mr. Lance or Mrs. Lance. A maid was left in the home to look after the children. On the day in question the maid became ill about two o'clock in the afternoon, and it became necessary for Mrs. Lance to leave her work and return to her home and take the maid to a doctor. Mr. Lance went to the school for the purpose of getting David Lance and driving him home but missed him. It

developed, therefore, that no adult was at the home of Mr. and Mrs. Lance to look after the children during the period shortly after the children had returned home from school. David Lance arrived home a little after four o'clock in the afternoon. James David Tatum arrived at his home at about four o'clock, left his school books there, then got his bicycle and rode to the Lance home. The children at the Lance home began to play in the backyard. The grandfather of David Lance had given him a BB gun and a quantity of shots or ammunition therefor as a Christmas gift prior to the happenings herein mentioned. When James David Tatum arrived at the Lance home, David Lance had the BB gun in his hand. The Tatum child then joined the other children in play. The children were climbing on top of a dog house but would not permit the Tatum child to climb up on the dog house and he announced that he was going home. David Lance was never permitted to have access to or possession of the gun and the shots without the supervision of one of his parents or some adult. The gun was kept unloaded in a closet in David's room, and the shots therefor had been hidden by the father of David Lance in a top dresser drawer under some of his clothes in the father's room.

Testifying, Mr. Lance said: "He (referring to his son David) had strict orders not to take it (the gun) out of the house under any circumstances without some grown person with him, and his grandfather when he gave him the gun, you know, told him not to take it out without us or him or somebody with him. When he gave him the gun he made a special point to give him orders on that, and we would occasionally all along and as far as my knoweldge he came and asked me one time to let him take it out besides the time I let him take it out." He said that this request of his son was refused. The appellee, Ellis Lance, further testified that the gun was hard to cock and on occasions when he had gone out with his son to use the gun, he had had to cock it for him.

When the Tatum child announced that he was going home, David Lance aimed the BB gun at him and told him not to move or he would shoot. David Lance then discharged the BB gun, shooting four times, one of which shots struck the Tatum child in the eye inflicting serious injuries and necessitating the removal of the eye. Another of the shot struck one of the fingers of the Tatum child.

It is the contention of the appellant that the appellees were guilty of actionable negligence in that they permitted their said minor child, David Lance, to have the said gun in his possession or to have access thereto. It is argued by the appellants that the BB gun with shot provided therefor is a dangerous instrumentality and that the appellees were negligent in not exercising proper supervision over the use of said gun by their minor child so as to prevent injury to others.

The appeal involves the question of the liability of a parent for the tort or torts of his child, and further involves the question as to whether or not under the facts of this case the appellees should have reasonably foreseen that injury to someone would result from the gun in the hands of the Lance child, or whether or not such question should be left to the determination of the jury. In Winn v. Haliday, 109 Miss. 691, 60 So. 685, this Court held that a parent is not liable for the torts of his child solely on the ground of the relationship. In the case of Dempsey v. Frazier, 119 Miss. 1, 80 So. 341, the Court held:

"The general rule of the common law is that the parent of a minor child cannot be held liable for the tortious acts of a child on the mere ground of the parental relationionship, but that the parent is responsible only on the same ground that he is for the torts of other persons."

The general rule is further stated in 67 C. J. S., Parent and Child, page 798, as follows: "As a general

rule, a person may be liable for an injury which is directly caused by the child, where the parent's negligence has made it possible for the child to cause the injury complained of and probable that the child would do so, as where the parent negligently permits a young child to use or have access to firearms or other dangerous weapons. . . ."

The gravamen of the appellant's complaint is that the appellees rendered accessible to their seven year old child the BB gun and the shot therefor, thus rendering accessible to him a dangerous instrumentality, and that they are therefore liable for the resulting injury. We do not think that this complaint is justified under the undisputed evidence in this case. We would have no hesitancy in holding that a BB gun accompanied by the shots or ammunition therefor in the hands of a seven year old child would constitute a dangerous instrumentality. The undisputed proof is, however, that the gun was kept unloaded in a closet in David Lance's room and that the shots or ammunition therefor were hidden by the father under his clothes in a dresser drawer in another room. Of course, the BB gun without the shots therefor would be entirely harmless. It is uncontradicted, however, that the gun and the shots therefor were kept apart by the parents of the Lance child, the gun being kept in a closet in David's room and the shot being kept concealed under clothes in the father's room. We cannot conceive what more could have been done by the parents of the Lance child to avoid rendering accessible to him the shots for the gun, unless they had locked up the shot. To say that they should have done this would be to impose upon them liability as insurers and of course they were not subject to such liability.

The case is one of simple negligence vel non. The further question is whether or not the parents of the Lance child as reasonably prudent persons should have reasonably foreseen or anticipated that the maid in the Lance

home would become sick, that it would become necessary for Mrs. Lance to take her to a doctor, and that Mr. Lance, who had gone for his child at the school, would miss the bus, and that during such interval the Lance child would be left in the Lance home alone, and that he would search the house for the shots which his father had concealed therein and would succeed in locating the same, and then use the gun to the injury of another. We think this latter question must be answered in the negative, and that since the evidence is undisputed and the record presents a case of negligence or no negligence, the principle announced in the case of the City of Greenville v. Laury, 172 Miss. 118, 159 So. 121, 122, is controlling.

In the Greenville case the plaintiff sought to recover of the city damages for an injury alleged to have been sustained when she caught her heel in a crevice in the street and was caused to fall. The evidence was undisputed that the crevice in the street was from one-half inch to three inches wide and from eighteen inches to two feet long and that it had existed in the street for such length of time as that the city either knew or should have known of its existence. In that case, the court said:

"In an action of law based on negligence, the question of negligence vel non is for the determination of the jury, *unless the doing of the act which caused the injury complained of is not in dispute or conclusively appears from the evidence, and no inference except that of negligence or no negligence can be justly drawn therefrom, in which event the question is for the determination of the trial judge.*" (Emphasis ours)

In the case before us, what transpired is entirely undisputed. The case, therefore, is one of negligence or of no negligence and the question of the liability of the appellants was for the determination of the trial judge. In order to reverse the action of the trial judge we would have to hold that in the face of the undisputed facts the

parents of David Lance should have reasonably anticipated that the children would be left alone in the home on the afternoon in question, that their small son seven years of age would locate the shots hidden in a dresser drawer in his father's room and would take them and the gun and undertake to use the same in violation of his father's strict orders, and that in failing so to do they were guilty of negligence. We do not feel warranted in so holding. While we deplore the tragedy revealed by the facts of this case, nevertheless, under the established rules governing the liability of parents for the torts of their child, we are of the opinion that the trial judge was not in error in sustaining the motion to exclude the evidence made at the conclusion of the testimony for the plaintiff and in directing a verdict for the defendants.

We are constrained to say that while we hold that the proof in this case is insufficient to impose liability upon the appellees for the injuries of the appellant, many tragic incidents similar to the one here recorded would be avoided if parents would wholly prohibit their children of tender age from having guns or rifles of any kind or under any circumstances.

In the light of the views hereinbefore expressed, we are of the opinion that the judgment of the court below should be and it is affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington, Ethridge,* and *Gillespie, JJ.,* concur. *Roberds, J.,* took no part. Lee and *Kyle, JJ.,* Dissent.

Lee, J. Dissenting:

With reference to the duty of a parent so to control his minor child as to prevent it from creating an unreasonable risk of bodily harm to others, the Supreme Court of Oregon, in 1945, in the case of Gossett v. Van Egmond, 155 Pac. 2d 304 said: "It is the general rule that where

a parent's negligence makes it possible for his child to gain control of an agency which, in the child's incompetent hands, may become dangerous to others, he may be held liable for resulting injuries.''

On the same question, 67 C. J. S., Parent and Child, Sec. 68, p. 798, in part says: ''As a general rule, a parent may be liable for an injury which is directly caused by the child, where the parent's negligence has made it possible for the child to cause the injury complained of and probable that the child would do so, as where the parent negligently permits a young child *to use or have access to* firearms or other *dangerous weapons,* * * *.''* (Emphasis supplied.)

The majority opinion concedes that ''a BB gun accompanied by the shots or ammunition therefor in the hands of a seven year old child would constitute a dangerous instrumentality.''

It does seem that, of all the gifts now available, a BB gun and its accompanying ammunition would be the last thing in the world that a grandfather would give his seven year old grandson. This casualty occurred slightly over a month after the gun came into the hands of the youngster. It is true that the evidence showed that he admonished his grandson to be careful with it. But it would be poor consolation to the victim of a rattlesnake bite that the donor of such a venomous reptile told his immature donee, at the time of making the gift as a pet, to be careful with the rattler.

It must be remembered that both the gun and the ammunition belonged to the boy, and that he had been permitted to shoot the gun when one of his parents was along. The father and mother both worked. It is true that they engaged the services of a maid to look after their children during their absence, but there is no claim that the parents, at any time, ever instructed the maid to see that the boy did not use the gun.

The parents permitted the boy to keep the gun in his room. It is true that they did not give him the shot or ammunition—they placed it in a dresser drawer in their room.

Undoubtedly they had some awareness of the potential danger from a seven year old boy and a BB gun and ammunition for it. The father said that he "hid" the ammunition in the drawer "under some of his clothes". But the boy knew there was shot or ammunition for the BB around the house. More than that, in my opinion, it is common knowledge that the bureau or dresser in the bedroom of father and mother serves as the repository for all articles that are put up for safekeeping. Most likely that would be the first place to which a seven year old boy would go in search of his ammunition for his BB gun.

The test is whether the parents negligently permitted the boy to have access to a dangerous weapon. It is my opinion that, as a legal proposition, there was an issue for the jury to say whether the parents, under these circumstances, negligently permitted their son to have access to this dangerous instrumentality.

The alleged hiding of the ammunition came from the mouth of the father. As was said in Gossett v. Van Egmond, supra: "It is true that the court should not refuse to direct a verdict merely because the evidence in support of the motion comes from the mouths of interested witnesses, but, as a general rule, it is for the jury to say whether or not a prima facie case, based upon inference, has been overcome. Only in extreme instances, when but one reasonable inference can be drawn from the facts, should the court direct a verdict."

In my opinion, it should be reasonably foreseen that some injury, not necessarily this one nor the manner in which it was received, would result, and that the jury could have so found. Cumberland Telephone & Telegraph Co. et al v. Woodham, 99 Miss. 318, 54 So. 890;

Mathews v. Thompson, 231 Miss. 258, 95 So. 2d 438. Since it is not claimed that the maid was required to see that the boy did not take the gun out, it is obvious that the required inference, invoked on account of her absence, and referred to in the majority opinion, vanishes.

With deference, I would reverse and remand for a new trial.

*Kyle, J.,* joins in this dissent.