[No. 23744. Department Two. July 21, 1932.]

B. R. SCRIBNER, *Respondent*, v. NATIONAL REFINING COMPANY, *Appellant.*[1]

*William A. Gilmore* and *W. W. Montgomery,* for appellant.

*Joseph H. Griffin,* for respondent.

[1]Reported in 13 P. (2d) 61.

TOLMAN, C. J.—Respondent, as plaintiff, sued for the recovery of salary and commissions earned as a salesman. A trial to a jury was had, resulting in a verdict in favor of the plaintiff in the sum of $1,050. From a judgment on the verdict, the defendant has appealed.

The respondent testified in a rather general and vague way to an agreement made the latter part of the year 1928 or early in 1929 by which he was employed as a salesman on a straight salary of one hundred and fifty dollars per month, plus commissions, on oil sold. The purpose of the employment was to introduce and sell in Seattle and vicinity a new product then being manufactured and put on the market by the appellant. Respondent testified to calling upon prospective customers throughout the entire year of 1929. He said that he sold plenty of oil, but could give but little evidence of sales actually made.

Six witnesses were called to corroborate him, all operators of service stations, public or private, and all testified that respondent repeatedly and over a period of some weeks or months solicited their patronage. Three testified that they bought oil from him, and three testified that they did not buy.

This is the whole of respondent's case in chief, and it is remarkable (a) for the vagueness of the testimony as to his employment on a salary; (b) for the entire failure of the evidence to show that respondent kept regular hours, made daily reports or that he devoted his entire time and attention, during business hours and continuously throughout the time he was employed, to his duties, as is the usual custom where compensation is by regular salary; and (c) for the frank admissions that, although after the first month he demanded his pay monthly or oftener, yet he was never paid anything whatever on account of salary either during the

entire year when, as he testified, the employment continued, or afterwards up to the time of trial.

The so-called corroborating testimony is rather meager even upon the point of his making an honest and thoroughgoing attempt to sell on commission. But however that may be, it does not go to the question of employment on salary at all, and in fact the desultory character of the work shown to have been done indicates rather that the selling of oil was a side line to which respondent devoted only such time as he saw fit, and of course is consistent only with compensation on a commission basis.

The defense was an absolute denial of any employment on salary. Appellant's managing officer, with whom respondent had testified that the contract of employment was made, testified that he was absent from Seattle from the middle of December, 1928, to March 11, 1929, and that it was not until three weeks later that the question of any employment was discussed, and then the only discussion and the only agreement was to the effect that respondent might sell oil on commission in connection with the other activities in which he was then engaged; his earnings in the way of commissions to be applied on an indebtedness already owing from him to appellant's managing officer.

It was further shown that, during the time respondent now claims many months' salary was due him, he borrowed money for his personal needs from the very man who should have paid the salary, and gave to him a chattel mortgage on his automobile as security. This transaction seems to be admitted by respondent in his testimony on rebuttal.

With this character of evidence before it, the jury returned a verdict not for one year at one hundred and fifty dollars per month as sued for, but for the sum of $1,050 only. We see no logical way of ar-

riving at such a verdict. If the jury believed that there was an agreement for salary at all, why did it not allow salary for the entire year? Respondent's evidence of his activities on a salary basis seems to cover the whole of the year 1929, each part as convincingly as any other. No good reason is suggested why the jury should believe him in part and reject his evidence as to the remainder, and yet, of course, the jurors are the sole judges of the credibility of the witnesses, and it is a serious thing to so far invade the province of the jury as to say here that, having disbelieved respondent in part, his whole testimony should have been rejected. The verdict bears strong evidence of a compromise between those jurors who chose to believe respondent *in toto* and those who placed no faith in his testimony.

In *Haefele v. Brackett,* 95 Wash. 625, 164 Pac. 244, after citing our previous cases bearing on the question, it is said:

"But we do not understand that a verdict will be set aside as within the rule of mistake or compromise or that it is impossible under the theory of either party, unless it shows upon its face that the jury has given way to passion or prejudice or has acted in willful disregard of its duty to consider the testimony, and a true verdict render."

We are convinced that, under that rule, this verdict can not so surely be said to be a compromise verdict as to warrant our setting it aside for that reason alone.

The trial court filed a written memorandum decision denying the motions for judgment n. o. v. and for a new trial, in which he said:

"As I intimated to counsel when the motion for nonsuit was made and also at the conclusion of the case, if the decision of this case had been left to me, I would have found for the defendant.

"To my mind the testimony given by the plaintiff was so unsatisfactory that I would not have cared to

predicate a judgment for any amount other than perhaps the small amount of commissions which he had earned.

"His counsel had great difficulty in getting him to testify as to when, where and under what circumstances the contract, which he claimed was made to employ him at the rate of $150 per month, was entered into.

"The plaintiff was also contradicted by the defendant's president whose testimony seemed to be fortified by the records of the defendant corporation, and certainly as to his absence in Oklahoma, at the very time that the plaintiff claimed to have made the arrangement which he suggested and to which he testified rather reluctantly; and to my mind it appeared that the president of the defendant was endeavoring to aid the plaintiff and did so by offering to allow him to sell oil on commission, and he further aided him by lending him money upon his automobile. No part of this latter sum, either of principal or interest, was paid, and it struck me as a very singular circumstance that not until the chattel mortgage upon the car was foreclosed and the plaintiff deprived of his automobile was an action brought to recover for this claimed salary."

Such statements deliberately incorporated in a written opinion unmistakably demonstrate that the trial court did not believe the respondent's testimony, and that testimony being disbelieved, there was no substantial evidence to support the verdict and the verdict can not be other than unjust, and hence substantial justice has not been done between the parties.

Under the rule announced in *Stickney v. Congdon,* 140 Wash. 670, 250 Pac. 32, there was an abuse of discretion in denying the motion for a new trial. Our later decision in *Pylate v. Hadman,* 151 Wash. 245, 275 Pac. 559, does not deny or limit this rule, but merely emphasizes it.

There was evidence of commissions earned and unpaid amounting to some thirty dollars. Respondent should be permitted to elect whether to accept a reduc-

tion of the verdict to thirty dollars or submit to a new trial.

Reversed, and remanded for further proceedings in harmony with the views herein expressed.

MAIN, HOLCOMB, BEALS, and MILLARD, JJ., concur.