[No. 24882.   Department One.   March 16, 1934.]

CURTIS BRAMMER, *Respondent*, v. C. S. LAPPENBUSCH, *Appellant.*[1]

[1]Reported in 30 P. (2d) 947.

626

*Whittemore & Truscott,* for appellant.

*Vanderveer & Bassett,* for respondent.

STEINERT, J.—This is an action for damages for personal injuries resulting from a collision between an automobile and a pedestrian upon a public highway. Trial by jury resulted in a verdict for the plaintiff. Motions for judgment notwithstanding the verdict and, in the alternative, for new trial having been denied, judgment was entered, from which defendant has appealed.

The questions raised by the assignments of error do not call for an extended narration of facts. Respondent's evidence was to the effect that he was walking along the highway, on the proper side, at night, and,

as appellant's automobile approached, stepped off onto the adjacent shoulder; that appellant suddenly swerved off the pavement onto the shoulder of the road and collided with him; and that, as a result of the collision, a piece of glass from the shattered headlight of appellant's automobile entered respondent's eye, injuring it to such an extent that it had to be enucleated, and that he was otherwise injured about his body, particularly his back. Appellant's evidence was to the effect that a passing automobile had struck his left front fender a glancing blow causing his car to swerve to the right; that it then proceeded forward under its momentum, but with its right wheels about two feet on the shoulder of the road; that, in the emergency, he had immediately applied his brakes to avoid a collision with respondent, who, he claimed, was on the pavement at the time; that, despite every reasonable effort on his part to avoid the accident, he was unable to do so.

Although respondent's evidence concerning the negligence of appellant was meagre and inconsistent in some respects, it was nevertheless sufficient, in our opinion, to take the case to the jury. We are also of the opinion that, under the evidence, as disclosed by the record, the motion for judgment notwithstanding the verdict was properly denied.

The case, however, presents a question of general importance and consequence, in that it calls for the construction of a statute which, no doubt, has already, in other cases, engaged the attention of various trial courts and members of the bar in this jurisdiction.

Chapter 138, Laws of 1933, p. 481, relating to new trials in civil actions, amended Rem. Rev. Stat., § 399, in certain respects, and also added a new section. The statute as it now reads, so far as it is material here, is as follows:

"The former verdict or other decision may be vacated and a new trial granted, on the motion of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party:

. . .

"(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice; . . .

"(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law; . . ." Rem. 1933 Sup. § 399.

"If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial . . ." Rem. 1933 Sup., § 399-1.

To get the proper approach to a discussion of the problem before us, it may be well to explain just how the question was raised, and how it was disposed of, by the trial court. Appellant's motion for new trial was based upon most of the statutory grounds, according to the old statute. The fifth ground of the motion was: "Excessive damages appearing to have been given under the influence of passion and prejudice;" which is virtually the language of subdivision 5 of the old statute prior to its amendment by subdivision 5 of the new statute above quoted. The sixth ground of the motion was: "Insufficiency of the evidence to justify the verdict, and that it is against law;" which is virtually the language of subdivision 7 of the old statute prior to its amendment by subdivision 7 of the new statute above quoted.

In denying the motion for new trial, the trial judge said:

"So far as this case is concerned I agree with counsel for the defense that there are many things in connec-

tion with it that to one experienced in the trial of cases would cause us to stop, look and listen before giving too great credit to some of the testimony. The circumstances were very unusual and peculiar as to the relationship of the parties, and the court probably would have considered all these things in the light of experience as counsel does, and perhaps not given to all this testimony the weight the jury gave. But that is the province of the jury and not of the court.

"It is evident to me that the 1933 legislature intended to and certainly did very materially restrict the power of the court to set aside verdicts of jurors when they are once returned. Why they did it, I do not know, but I think their right to do it is unquestioned. The fact that they did lessen the scope of the former statute as to the rights of the trial court indicates their idea to curtail the rights of the court to interfere with the verdict of jurors. As to the good judgment of the policy I am not concerned.

"I appreciate very much the labor that counsel has expended in preparing this matter and the thorough way in which it has been presented, but I cannot get by the fact that the statute evidently intended to do what it seems to me it has done, that is, to make the verdict of the jury absolutely impregnable and prevent the court interfering other than in cases where it is so flagrant that no reasonable mind could arrive at that conclusion. As I say, the policy of that is to my mind questionable."

It is apparent, we think, that the trial court was of the opinion that the statute made the verdict of the jury impregnable against any exercise of discretion on the part of the court with reference to setting the verdict aside, even though the court were satisfied that substantial justice had not been done, and that, wholly because of that view, the court denied the motion for new trial. We believe that the court was in error in its conclusion.

The statute does not attempt to limit the inherent power of the court. The form of its language, it will

be noted, is permissive, not restrictive. It says that, for certain causes, the court *may* grant a new trial. It does not say that it shall not do so for any other cause. In so far as the amended portion of the statute is concerned, it neither conferred any power upon the court which it did not already inherently possess, nor did it attempt to restrict the court in the exercise of its inherent power. Had the legislature never enacted subdivisions 5 and 7 of § 399 as amended, the court would nevertheless have had inherent power to grant a new trial upon either of those grounds.

It may well be argued that the legislature could not, even if it should attempt to, control or limit the inherent power of the court in this respect. There is respectable authority for such argument and contention, but we are not called upon to decide that question here. It is, at least, the rule in this state, judicially pronounced, that the enumeration of grounds for new trial does not restrict the inherent power of the court to grant a new trial for any other sufficient cause, unless the restriction is expressed. In *Sylvester v. Olson,* 63 Wash. 285, 115 Pac. 175, it is said:

"The inherent power of the courts to grant a new trial where it appeared that an injustice had been done is recognized in the first case reported on that subject of the law. *Wood v. Gunston,* Style 466 (1655). In *Bright v. Eynon,* 1 Burr. 390, 395, Lord Mansfield said:

" 'The rule laid down by Lord Parker, in the case of the *Queen* against *The Corporation of Helston,* H. 12 Ann. B. R. (Luca's Rep. 202), seems to be the best general rule that can be laid down upon this subject, viz., "doing justice to the party," or, in other words, "attaining the justice of the case." The reasons for granting a new trial must be collected from the whole evidence, and from the nature of the case considered under all its circumstances.'

"The enumeration of grounds for a new trial 'does not restrict the inherent power of the courts to relieve

a party where an injustice has been done, or to grant new trials for any other sufficient cause not enumerated unless the restriction is expressed. The statutory grounds are generally so broad as to exclude all the errors, accidents and exigencies which might work injustice at the trial.' 14 Ency. Plead. and Prac., 718.''

All of our decisions have proceeded upon the principle that, if the trial court, in the exercise of its sound discretion, is satisfied that substantial justice has not been done in a given case, it is its right and its duty to set the verdict aside.

In *Clark v. Great Northern R. Co.*, 37 Wash. 537, 79 Pac. 1108, we said:

''Our statute provides that a new trial may be granted, among other grounds, for insufficiency of the evidence to justify the verdict; and this power must be exercised by the trial courts, if at all. These courts should take due care not to invade the legitimate province of the jury, but if, after giving full consideration to the testimony in the light of the verdict, the trial judge is still satisfied that the verdict is against the weight of the evidence, and that substantial justice has not been done between the parties, it is his duty to set the verdict aside.''

In *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483, we said:

''The trial court, in passing upon a motion for new trial based upon the ground that the verdict of the jury is inadequate or excessive, will consider the evidence, and if that court is of the opinion that substantial justice has not been done, it will, in the exercise of its duty, grant a new trial.''

See, also, to the same effect, *Stickney v. Congdon,* 140 Wash. 670, 250 Pac. 32; *Daigle v. Rudebeck,* 154 Wash. 536, 282 Pac. 827; *Field v. North Coast Transportation Co.,* 168 Wash. 515, 12 P. (2d) 749; *Scribner v. National Refining Co.,* 169 Wash. 44, 13 P. (2d) 61; *Huntington v. Clallam Grain Co.,* 175 Wash. 310, 27

P. (2d) 583; *Hinz v. Crown Willamette Paper Co.*, 175 Wash. 315, 27 P. (2d) 576; *Fagerdahl v. North Coast Transportation Co.*, 175 Wash. 600, 28 P. (2d) 107.

We are aware that the cases just cited arose under the old statute, but the principle runs throughout all of them that, where the court is satisfied that substantial justice has not been done in the case, it should not hesitate to grant a new trail. The mere fact that a later statute has in terms specified a ground in somewhat narrower language than formerly is not to be construed as a limitation upon the court's inherent power, in the absence of express restriction.

The trial court should not have considered the verdict as "absolutely impregnable" under the statute, but should have exercised its discretion in passing upon the motion for new trial. The case should therefore be remanded for reconsideration of the motion by the trial court. *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166.

There are several other questions that we must dispose of because, whether the trial court grants or whether it denies the motion for new trial, those questions will probably, or may possibly, be presented again. We will dispose of them as briefly as possible.

■ Appellant assigns as error the exclusion of certain evidence. Respondent's main element of damage was the loss of his left eye. Appellant sought to establish the fact that respondent had wholly, or at least partially, lost the sight of that eye before this particular accident. Evidence was produced by appellant tending to prove that, on several prior occasions, respondent had injured the same eye and had been incapacitated thereby for protracted periods of time; also, that he had received compensation and insurance benefits therefor. A physician was then called as a witness for appellant and was asked whether or not

respondent had requested him in 1931 to enucleate the eye. The witness declined to answer, on the ground that it was a privileged communication, and respondent's counsel followed with an objection to the question. The court sustained the objection.

Rem. Rev. Stat., § 1214, provides:

"The following persons shall not be examined as witnesses: . . .

"(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient;"

The witness was a regular physician. The respondent was his patient. The request for enucleation was information acquired in attending the patient, and was necessary to enable the physician to act for him.

The basis and extent of the rule of privileged communications between physician and patient have received some severe criticism by courts and text-writers, but the rule is, nevertheless, firmly established in this state.

In *Noelle v. Hoquiam Lumber & Shingle Co.*, 47 Wash. 519, 92 Pac. 372, it is said:

"No case has been called to our attention which holds that a person may not describe his injuries as he sees and feels them, without a reference to what his attending physician or surgeon may have told him, and that an adverse party may then call such physician and prove by him that the patient is mistaken or has testified untruthfully."

See, also, the following cases in support of the rule: *Dubcich v. Grand Lodge A. O. U. W.*, 33 Wash. 651, 74 Pac. 832; *Wesseler v. Great Northern R. Co.*, 90 Wash. 234, 155 Pac. 1063, 157 Pac. 461; *Strafford v. Northern Pac. R. Co.*, 95 Wash. 450, 164 Pac. 71; *State v. Miller*, 105 Wash. 475, 178 Pac. 459; *Hansen v. Sand-*

*vik,* 128 Wash. 60, 222 Pac. 205; *Jahns v. Clark,* 138 Wash. 288, 244 Pac. 729; *Toole v. Franklin Inv. Co.,* 158 Wash. 696, 291 Pac. 1101.

We are satisfied that the evidence concerned a privileged communication, and was therefore properly excluded.

■ Appellant next assigns as error the giving of instructions Nos. 6, 7 and 11. Instruction No. 6, on the measure of damages, included an item for future pain and suffering. Appellant argues that there was no evidence upon that subject. The record discloses that respondent testified that his eye was still irritated, that it throbbed at night and disturbed his sleep. He also testified that his back still gave him trouble. The evidence was sufficient to warrant the instruction.

■ Instruction No. 7 is complained of in two respects: (1) because it advised the jury of the provisions of the motor vehicle statute relative to lights, concerning which there was no issue in the case, and (2) because it advised the jury that, under the statute, it was unlawful to drive an automobile along any pavement on a public highway with one or all wheels off the paved portion of the road except for the purpose of stopping off the pavement, leaving out of consideration acts done in an emergency.

As to the first part of the instruction, it is conceded that it was without the issues. It was, however, correct as an abstract proposition of law. Moreover, the case was tried upon the theory that each party saw the other, and the court did not submit any issue to the jury relative to the sufficiency of lights. The instruction, in that respect, could in no way have misled or confused the jury. It was therefore not prejudicially erroneous. *Stokes v. Magnolia Milling Co.,* 165 Wash. 311, 5 P. (2d) 339.

As to the second phase of the instruction, the exception goes not to the incorrectness of what was contained therein, but rather to what was omitted from it. While the instruction might well have included the emergency feature, the court was not required to amend an otherwise correct instruction, in the absence of a request by appellant. The court need not be more diligent than the party. *Ziomko v. Puget Sound Electric Co.,* 112 Wash. 426, 192 Pac. 1009. One of the chief defenses of appellant was that he was called upon to act in an emergency. Hence, a proper request should have been made by him regarding that issue. An exception does not take the place of a request. *Allend v. Spokane Falls & N. Ry. Co.,* 21 Wash. 324, 58 Pac. 244.

Instruction No. 11 was taken almost verbatim from one approved in *Jordan v. Seattle,* 30 Wash. 298, 70 Pac. 743, and from another approved in *Short v. Spokane,* 41 Wash. 257, 83 Pac. 183. It was applicable, under the evidence in this case.

Finally, appellant assigns as error the denying of his motion for a mistrial on the ground that respondent had unnecessarily injected into the case the fact that appellant carried liability insurance.

The matter of insurance was first injected in an incidental way, and in so far as it then went it was entirely proper, under the rules announced in *Moy Quon v. Furuya Co.,* 81 Wash. 526, 143 Pac. 99; *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159; and *Gianini v. Cerini,* 100 Wash. 687, 171 Pac. 1007. As the trial proceeded, the insurance matter took on larger proportions, but its development was gradual, and both sides had a part in it. The striking feature about it, however, is that no objection whatever was made except to one question, which was the last question propounded by respondent's counsel, and that objection

was promptly sustained by the court. A short cross-examination by appellant's counsel concluded the testimony. Then, after the testimony had been closed, appellant for the first time made a motion for mistrial.

At any time in the progress of the inquiry, appellant might have raised an objection, if he felt that opposing counsel was trespassing on forbidden territory, and thereby either have checked the matter or else have protected himself by the record. No objection was made, however, and the court was apparently led to believe that appellant was content to proceed with the inquiry. Under the peculiar circumstances attending the development of this inquiry, we think that the motion for mistrial came too late.

For the error of the court in declining to exercise its discretion in passing on the motion for new trial, the judgment is reversed, and the cause is remanded to the trial court with direction to reconsider such motion and exercise its discretion thereon and either grant or refuse a new trial.

BEALS, C. J., MAIN, MITCHELL, and MILLARD, JJ., concur.