[No. 25011.   Department Two.   January 18, 1935.]

EDITH ROBINSON, *Respondent and Cross-appellant,* v.
E. DEAN EBERT *et al., Appellants,* BREMERTON
BUICK COMPANY, *Respondent.*[1]

[1]Reported in 39 P. (2d) 992.

388

*J. W. Bryan, Poe, Falknor, Falknor & Emory,* and *Karr & Gregory,* for appellants.

*Koenigsberg & Sanford* and *Padden & Moriarty,* for respondent and cross-appellant.

BEALS, J.—For many years, defendant E. C. Ebert was a resident of Kitsap county, engaged in the business of banking. Mr. and Mrs. Ebert and their family, including their son, defendant E. Dean Ebert (who during the year 1931 was a minor of the age of nine-

teen years), resided in the city of Bremerton. Mr. Ebert owned an automobile, which he kept in the two-car garage on his home lot.

Defendant Bremerton Buick Company was incorporated during the month of November, 1931, with a capital stock of two thousand dollars, and commenced business December 1 following. E. C. Ebert subscribed for six hundred dollars of the capital stock, and Dean Ebert also purchased a few shares of the stock and was made assistant treasurer of the corporation, keeping its books at night, for which he received $12.50 a week. At this time, Dean was a teller in his father's bank, for which he received sixty dollars a month.

December 2, Dean purchased through the Bremerton Buick Company (which will hereinafter be referred to as the Buick Co.) a Buick sedan, for which he testified that he paid $1,131.80 cash, of which he borrowed eight hundred dollars from his father's bank, secured by a chattel mortgage on the sedan. Dean installed the new car in his father's garage, and used it according to his pleasure.

For several years prior to 1931, plaintiff, Edith Robinson, and one J. A. C. Martell had been living together as husband and wife, although they had never legally assumed that relation. Just before midnight, December 25, 1931, plaintiff, with Mr. Martell, in the latter's Ford car, which Mr. Martell was driving, was proceeding in an easterly direction along state highway No. 14 a little less than a mile west of Bremerton. At the same time, Dean Ebert, driving his sedan, was proceeding along the same road in a westerly direction, accompanied by his friend Willard Parker. The two automobiles collided, with the result that Mr. Martell was killed and plaintiff injured.

In December, 1932, plaintiff instituted this action,

seeking to recover damages which she alleged were due her by way of compensation for her injuries. She named as defendants E. C. and Ruth Ebert (the parents of Dean Ebert), E. Dean Ebert, and Bremerton Buick Company, a corporation. The action was tried upon the amended complaint, and resulted in a verdict against all the defendants in the sum of $15,-354. The trial court thereafter entered judgment in favor of defendant Buick Co. notwithstanding the verdict, and entered judgment on the verdict against the other defendants.

Defendants Ebert have appealed from the judgment against them, and plaintiff has cross-appealed from the ruling of the trial court granting the motion of the Buick Co. for judgment in its favor notwithstanding the verdict. For convenience, Edith Robinson will be referred to as respondent, the Eberts as appellants, and respondent Buick Co. by its name.

Appellants have moved for an order striking respondent's answering brief because of delay in filing the same. Undue delay in filing a brief will be penalized by directing that no costs be allowed on account of such brief in case the party filing the same prevails in the action. Mere delay in filing a brief does not justify an order striking the same from the records. Appellants' motion is accordingly denied.

Appellants assign error upon the overruling of their demurrer to the complaint and upon the denial of their challenge to the sufficiency of the evidence and of their motions for judgment at the close of the case. They also assign error upon the denial of their motions for judgment in their favor notwithstanding the verdict or in the alternative for a new trial, upon the refusal of the trial court to reduce the amount of the verdict, and upon the entry of judgment against them. They also complain of certain rulings of the trial court

in rejecting evidence which they offered and in overruling their objection to evidence offered by respondent. They also assign many errors upon instructions given by the court, and upon the court's refusal to give two instructions requested by appellant Dean Ebert.

Respondent assigns error upon the order of the trial court granting respondent Buick Co.'s motion for judgment in its favor notwithstanding the verdict, and upon the entry of judgment in accordance with this ruling.

We are clearly of the opinion that the complaint stated a cause of action, and that the trial court did not err in overruling the demurrer thereto.

We shall next discuss the questions involving the sufficiency of the evidence to carry the case to the jury as to Mr. and Mrs. E. C. Ebert. Appellant E. C. Ebert testified that his son Dean was of a frugal disposition, and had saved some money concerning which the witness knew nothing prior to December, 1931, and that the witness was not advised concerning his son's contemplated purchase of an automobile, nor, when the car appeared in the family garage, did he know that the car had been bought by the boy.

Dean Ebert testified that he knew that his father would object to his buying a car, and that he kept his plan to make such an investment a secret from his father; that, upon the organization of the Buick Co., he selected in Seattle a Buick sedan which the Buick Co. bought for him; that he later paid the chattel mortgage in monthly installments according to its terms out of the money which he earned. He further testified that he received the car December 2, and, desiring a license for the month remaining of the year 1931, appropriated a discarded set of dealer's license plates originally issued to the Mann Motor Company,

which may be said to be the predecessor of the Buick Co., and placed these license plates upon his car. In this connection, it is admitted that Dean Ebert had no right whatsoever to use these license plates, and that, in so doing, he was violating the law. The witness also admitted that his testimony at the inquest and on a previous trial of this action had differed from that given by him upon the trial now being considered.

Examination of the record convinces us that the trial court did not err in submitting the case to the jury as to Mr. and Mrs. Ebert. While a considerable portion of the testimony given by E. C. Ebert and his son Dean was not specifically denied or explained by other testimony on behalf of respondent, the Eberts' testimony, being, as it was, that of interested parties, was rightly submitted to the jury with the other evidence in the case for their consideration. The evidence as a whole does not require a holding that Mr. and Mrs. E. C. Ebert were entitled to judgment in their favor as matter of law.

In the amended complaint, it was alleged that Dean Ebert was operating the automobile

" . . . both as a family car, with the knowledge and consent of and for the use and benefit of the community composed of E. C. Ebert and his wife, the parents of E. Dean Ebert, and for the use and benefit of the defendant Bremerton Buick Company. That at the time in question the said automobile was the common property of all of the defendants herein."

A special interrogatory was submitted to the jury, which, with the jury's answer, reads as follows:

"INTERROGATORY No. 2: Who was the owner of the Buick automobile at the time of the collision in question? ANSWER: E. C. Ebert, Mrs. E. C. Ebert and E. Dean Ebert, a minor."

Appellants argue that, as respondent alleged a common ownership of the automobile, and the jury by its answer to the special interrogatory found that such common ownership existed, it must now be held, as matter of law, that Mr. and Mrs. E. C. Ebert are not liable for the negligence of their son and any resulting damage caused by such negligence. While it is, of course, true that a joint owner of personal property may under ordinary circumstances use it without the permission of his co-owner and without rendering such owner liable in damages, this rule is neither absolute nor invariable, its application or non-application depending upon the circumstances of the particular case. A parent can, and often should, forbid his minor child to use an automobile or a firearm the entire ownership of which may rest in the minor. No absolute rule can be laid down as to parental duty in cases involving liability for the negligence of an unemancipated minor child. The question of the minor's status, as whether emancipated or not, was for the jury; and under the record herein is not to be decided as matter of law. 46 C. J. 1346, §§ 200, 201.

Appellants correctly distinguish between a partnership and a joint ownership, and submit authorities to the effect that one joint owner can not under ordinary circumstances render another joint owner responsible for his acts. We are unable, however, to follow appellants' argument that the record in this case requires the entry of judgment in favor of Mr. and Mrs. Ebert notwithstanding the verdict. In this connection, appellants cite several authorities, relying particularly upon *Knight v. Cossitt*, 102 Kan. 764, 172 Pac. 533, and *Mittelstadt v. Kelly*, 202 Mich. 524, 168 N. W. 501. In each of these cases, the automobile which inflicted the injuries complained of was jointly owned by a father and a son who was past the age of majority.

The questions presented were therefore entirely different from that now before us.

Appellants also rely upon the case of *Leppard v. O'Brien*, 225 App. Div. 162, 232 N. Y. Supp. 454. In that case, a car was owned by two brothers, and it was properly held that one of them was not responsible for injuries inflicted by the other in driving the jointly-owned automobile. The brother held not liable was not in the car at the time of the accident, and it was not being used or operated in his business or in any joint enterprise.

In the case at bar, Dean Ebert was a minor, residing with his parents in their home. The question of the parents' liability under all the circumstances disclosed by the record before us was for the jury, and not for the court to determine, as matter of law. *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59; *Hanson v. Eilers*, 164 Wash. 185, 2 P. (2d) 719.

Whether a parent gives to an unemancipated minor child an automobile with permission to use the same, or whether he gives the child the money with which to buy an automobile, or whether he permits the child to purchase a car with money given the minor by some one else or earned by him, would, under circumstances similar to those here shown, appear to make little difference as to the question of whether or not the parents' responsibility constitutes a question of fact to be determined by the jury. We, however, of course go no further than to hold that, in the case at bar, the trial court did not err in submitting the question to the jury for their determination.

Respondent called appellants E. C. Ebert and his son Dean as adverse witnesses, and appellants E. C. Ebert and Mrs. Ebert now contend that the testimony as to the ownership of the car was not con-

tradicted; and that, upon the record as made, they are entitled to judgment in their favor. In addition to the testimony of the Eberts, appellants called as a witness Mr. S. A. McGilvray, cashier of Mr. Ebert's bank, and also called the manager of respondent Buick Co. Certain exhibits were also introduced which, to some extent, support appellants' theory of the case.

Appellants argue that a party is bound by adverse testimony which he produces, unless that testimony is contradicted by other testimony. While it is true that there is a presumption of truth, rather than falsehood, we find no ground for the application, as matter of law, of such a presumption here, as the questions of fact were for the jury to determine. Appellants admit that, in certain cases, the consent of a parent to the use of an automobile by a child may be presumed. As appellants say, if a parent owns a car, he may lock it up and forbid his child to use it. It is equally true, however, that a parent may forbid a child to use the child's own car, the right of an unemancipated minor to use such instrumentalities not being absolute.

The evidence in this case was sufficient to carry the case to the jury upon the question of the parents' liability under the doctrine laid down in the cases of *Birch v. Abercrombie* and *Hanson v. Eilers, supra.* The case last cited was tried to the court, and in determining the appeal we called attention to the fact that the father and son, who were appellants, as here, were interested witnesses, and that the court was not required to accept their testimony as to the purchase, ownership and use of the car. The cases of *State v. Foley,* 174 Wash. 575, 25 P. (2d) 565, and *Simmons v. Anderson,* 177 Wash. 591, 32 P. (2d) 1005, are to the same effect.

It is admitted that the collision took place

within a portion of the highway set off by signs reading "Speed Limit 25 Miles By Order of State Highway Committee." Appellants contend that the evidence showed that these signs were not placed upon the highway in accordance with the resolution passed by the appropriate authority directing that, on a portion of this highway, signs be placed limiting the speed to twenty-five miles an hour. Appellants argue that, in one of its instructions to the jury, the trial court erred by calling to the jury's attention allegations of respondent's amended complaint referring to these signs limiting the speed of traffic.

Assuming that the collision occurred without the zone designated in the resolution, still it was admittedly within the zone embraced between the signs. Under ordinary circumstances, persons driving upon a highway may rely upon signs apparently regularly posted by competent authority, and should observe them. *Comfort v. Penner,* 166 Wash. 177, 6 P. (2d) 604. The signs were placed by officials having authority to place such warnings and were the usual signs so used. Under the evidence, we find no error in the instruction concerning the same of which appellants complain.

Instruction No. 27, read to the jury by the court, reads as follows:

"You are instructed that in the event your verdict is for the plaintiff, the fact that the plaintiff lived with J. A. C. Martell for a number of years as husband and wife without having been lawfully married to the said J. A. C. Martell can make no difference in the amount of the verdict, and the amount of your verdict should be the same as you would award had there been a lawful marriage relationship between the plaintiff and the said J. A. C. Martell."

Appellants contend that, by this instruction, the jury were told that they could bring in a verdict in

respondent's favor for damages based upon Mr. Martell's death to the same extent as though respondent and Mr. Martell had been husband and wife. The instruction is not as clear as it should have been, but instruction No. 26 given by the court reads as follows:

"You are instructed that this action is not brought for damages for the death of Mr. Martell, and that if your verdict is in favor of the plaintiff in this action, you are not to include, in fixing the amount of that verdict, the items of loss of support, loss of society, mental pain and suffering, nor any other element of loss, if any, which plaintiff may sustain by reason of Mr. Martell's death."

Considering the two instructions together, it must be presumed that the jury understood instruction No. 27 as prohibiting the award of damages on account of Mr. Martell's death. Appellants' assignment of error based upon instruction No. 27 is without merit.

By its instruction No. 1, the court stated at considerable length the issues as tendered by respondent's complaint, numbering different paragraphs of the instruction in Roman numerals. Appellants contend that this instruction amounts to violation of the rule that pleadings shall not go to the jury. While the matter of respondent's contentions as set forth in her complaint need not have been stated in such detail, we find no reversible error in the instruction as given.

The trial court gave an instruction numbered 1½, and later, after argument, gave a substituted instruction bearing the same number in the following language:

"You are instructed that the allegations of the pleadings, that is to say, the plaintiff's complaint, the answers of the defendants and the plaintiff's reply are not to be considered as evidence.

"The court removes from the consideration of the

jury that portion of subdivision (h) of paragraph X of the plaintiff's complaint relating to the alleged propensities, habits, nature and incompetency as an automobile driver, of the defendant, E. Dean Ebert, and the alleged knowledge on the part of the defendants, Bremerton Buick Company and E. C. Ebert and wife, of such alleged propensities, habits, nature and incompetency of the defendant E. Dean Ebert.

"The jury will therefore disregard said allegations and will also disregard the testimony of J. W. Carr and John Martin relative to conversations had between said witnesses and the defendant, E. C. Ebert, relative to the sons of the latter, said testimony having been by the court stricken."

Appellants contend that this resulted in prejudice to them which they could not cure. During a long and bitterly contested trial such as that in the case at bar, the statement of facts containing over a thousand pages, situations often arise which seem to the respective parties to result in an unfair advantage to the opposing side. Such situations inhere in lawsuits, particularly in those tried to juries, but before a judgment can be reversed and a new trial ordered, much more must appear than forms the basis of the contention of appellants which we are now considering. In connection with this matter, we find no error in the instruction of the court as finally given, and it must be considered that the jury, in considering their verdict, understood and followed the instruction.

Appellants base other assignments of error upon instructions of the court, but we find these assignments to be without merit.

Appellants assign error upon the refusal of the trial court to give certain instructions which they, or some of them, requested. We have examined these requested instructions, and find that, in view of the instructions as given by the court, these assignments of

error do not call for a reversal of the judgment in respondent's favor.

Appellants state that, since the rendition of the judgment herein and the taking of the appeal to this court, respondent caused certain writs of garnishment to be served upon some insurance companies, and that one of these companies answered that it had issued a policy in the sum of five thousand dollars to appellant Dean Ebert which affords protection in this case in the amount stated. Appellants contend that certain proceedings in connection with this matter amount to an estoppel against respondent, and now bar her from making any claim that the automobile was owned by any person other than E. Dean Ebert, and also estop her from further maintaining her claim against Mr. and Mrs. E. C. Ebert. These matters are shown by a supplemental transcript, but we find nothing therein which supports appellants' contentions that this court should now, based upon the matters therein shown, direct judgment in favor of the appellants referred to.

Respondent cross-appealed from the judgment in favor of Bremerton Buick Company notwithstanding the verdict. We find in the record nothing which supports the verdict of the jury against this respondent corporation, and on respondent's cross-appeal the judgment is affirmed.

Appellants interposed motions for judgment in their favor notwithstanding the verdict or in the alternative for a new trial, and now severally assign error upon the denial of these motions. We are satisfied that the motions for judgment notwithstanding the verdict were properly denied.

The motions for a new trial present a different question. The jury awarded respondent $15,354, and appellants contended in support of their motions

for a new trial that this award was grossly excessive. In passing upon the motion for a new trial, the court said:

"While in my judgment the verdict in the case at bar is excessive, and under the former practice I would not only feel justified but consider it my duty to reduce the same by at least $7500.00, the last legislature limited the power of both the trial and supreme courts with reference to reductions of verdicts of juries. Under the former statute, Sec. 399, Rem. Rev. Stat., the trial courts were given power to award a new trial or reduce the award of the jury if it appeared that the damages were awarded under the influence of passion or prejudice."

In the case of *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947, this court construed chapter 138, Laws of 1933, p. 481, Rem. 1934 Sup., § 399 [P. C. § 8225], referring to the granting of a new trial. The same matter was considered by this court in the cases of *Lamping v. Ripley,* 178 Wash. 206, 34 P. (2d) 459, and *Hatcher v. Globe Union Manufacturing Co.,* 178 Wash. 411, 35 P. (2d) 32. Under the cases cited, the trial court should have considered appellants' motion for a new trial from a different standpoint, and this cause is accordingly remanded, with directions to the trial court to reconsider appellants' motion for a new trial.

TOLMAN, HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.