[No. 30640. Department One. November 26, 1948.]

JEROME A. POTTS, *Respondent,* v. DENNIS LAOS *et al.,*
*Appellants.*[1]

[1]Reported in 200 P. (2d) 505.

*H. Earl Davis,* for appellants.

*Harvey Erickson* and *Frank R. Freeman,* for respondent.

STEINERT, J.—This was an action for damages for personal injuries and property impairment resulting from a collision between a motorcycle operated by the plaintiff and a passenger automobile driven by one of the defendants. The action was tried to a jury, which returned a verdict in defendants' favor. The court granted plaintiff's motion for a new trial, and from an order embodying that ruling defendants have appealed.

The accident out of which this action arose occurred April 28, 1947, at about 1:30 p. m., within or in close proximity to the intersection of Third avenue and McClellan street, in the city of Spokane. Third avenue is an arterial highway extending in an easterly-westerly direction. McClellan street, extending in a northerly-southerly direction, intersects Third avenue at right angles. Both streets are fifty-one feet wide, from curb to curb.

At the time of, and immediately before, the accident, a line of cars stood parked along each side of Third avenue, east of the intersection, although on the north side the line did not extend all the way to the east pedestrian lane of McClellan street. At that same time, the employees of a building mover, by use of a truck and certain mechanical devices called dollies, were transporting a gasoline service station eastwardly along Third avenue. This service station was twenty-four feet wide and thirty feet long, and was being towed lengthwise. The truck and front end of the service station had passed beyond the east pedestrian lane of McClellan street, but the rear end of the station was still some distance within the limits of the intersection, such distance being variously estimated at from four to twenty-five feet. As this combination of truck and service station proceeded across the east pedestrian lane of McClellan street, its right-hand side was kept as near the south curb of the avenue as the line of parked cars on that side would permit. Owing to the width of the station and the two lines of parked cars, a space of only ten or twelve feet, on the north side of Third avenue, was left for traffic. The weather at the time was clear, and the pavement was dry.

On April 28, 1947, the day of the accident, respondent, Jerome A. Potts, was, and for four or five years prior thereto had been, a motorcycle policeman in the employ of the city of Spokane. At about 1:15 p. m., on that day, he was on duty, with his motorcycle, in the vicinity of Third avenue and Arthur street, which is fifteen blocks east of the intersection of Third avenue and McClellan street. His motorcycle was equipped with a radio for receiving calls, also with a white light, two red lights, and a siren which was operated by means of a hand lever.

While thus engaged upon his duties, respondent received several successive messages from police headquarters that a fire had broken out at Second avenue and Lincoln street, which is seven blocks west and one block north of the intersection of Third avenue and McClellan street, and his instructions were to go immediately to the scene of the fire.

He at once started in that direction, driving his motorcycle westwardly along Third avenue toward McClellan street. His testimony was that while traversing that course his red lights were flashing and his siren was sounding.

The statutes of this state, as well as the traffic ordinances of the city of Spokane, provide that, upon the immediate approach of an authorized emergency vehicle giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel, and as close as possible, to the right-hand edge or curb of the public highway, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a peace officer. The particular city ordinance further provides, however, that the operator of an authorized emergency vehicle is not relieved of the duty to operate with due regard for the safety of all persons using the highway, but, despite the right of way provision of the ordinance, shall remain liable for the consequences of operating such vehicle in reckless disregard for the safety of others.

Respondent testified that the speed of his motorcycle, as he approached the intersection of Third avenue and McClellan street, was twenty-five or thirty-five miles an hour. In this he was corroborated by a number of disinterested witnesses, who also testified that his siren had been sounding for several blocks. One of these witnesses, a truck driver, in obedience to the sound of the siren, drew his truck alongside the curb of Third avenue near McClellan street and stopped; likewise, the driver of the truck which was hauling the gasoline service station brought the truck and service station to a stop as near the curb as was possible.

In the meantime, appellant Dennis Laos, who will hereinafter be referred to as though he were the sole appellant, was driving his 1940 Ford sedan eastwardly along Third avenue toward McClellan street, in the direction from which respondent was approaching on his motorcycle. It is not entirely clear from appellant's testimony whether he in-

tended, after crossing the intersection, to continue eastwardly along Third avenue, or whether he intended to turn to the left, in the intersection, and proceed north along McClellan street.

The substance of his testimony regarding the events immediately prior to the accident was that, in proceeding across the intersection, along the south side of Third avenue, he came up behind the building which was being moved eastwardly and directly ahead of him; that he stopped or slowed down his automobile, looked forward to see whether any traffic was coming from the east, and listened to hear any siren that might be sounding. Seeing no one directing traffic around the moving building and hearing no siren, he veered to his left and proceeded slowly forward in a northeasterly direction, intending, apparently, to go around the towed building, on its north, or left-hand side. As indicated above, the building was then occupying all the available space on the south half of Third avenue and a part of the space on the north half.

When appellant's car reached a point near the northwest corner of the service station, he for the first time saw the red lights of respondent's motorcycle, which he estimated was only about sixty feet distant from him and traveling directly toward him at a speed of forty-five or fifty miles an hour. At that same instant, he also for the first time heard the siren of the motorcycle. His estimate of respondent's speed was corroborated by the testimony of several witnesses.

Appellant continued forward slowly in a northeasterly direction, thus exposing the right-hand side of his automobile to traffic coming from the east and, for the time being, almost completely blocking the way of such traffic proceeding through the narrow corridor leading into the intersection.

A traffic ordinance of the city of Spokane provides that it shall be unlawful for any person to pass any overtaken vehicle unless he shall have a clear and unobstructed view ahead for a distance sufficient for safe passing, all factors

considered. Another ordinance provides that no vehicle shall overtake and pass, or attempt to pass, another vehicle at a street intersection, except by direction of a traffic officer. The trial court instructed the jury in accordance with each of the ordinances referred to herein.

At about this same time, respondent, approaching on his motorcycle, for the first time saw appellant's automobile when it was approximately sixty or seventy feet directly ahead of him. Respondent immediately applied his brake and endeavored to bring his machine to a stop, but was unable to do so. Instead, the motorcycle skidded, traveling sideways a distance of about fifty-one feet, and collided with the automobile, striking it upon the front portion of its right rear fender. As a result of the collision, respondent sustained the injuries and loss for which recovery is sought in this action.

It is undisputed that the evidence in this case presented two clear-cut issues: (1) whether appellant was negligent in attempting to pass around the northwest corner of the moving service station in the manner in which he did, and (2) whether respondent was guilty of contributory negligence, either in failing to give adequate warning of his approach or in operating his motorcycle in such a manner as to constitute reckless disregard for the safety of other users of the highway.

The jury returned a verdict for the appellant, and it is impossible now to tell whether the verdict was based on a finding by that body that the appellant was not guilty of actionable negligence, or on a finding that, even if appellant was guilty of negligence, nevertheless respondent himself was guilty of such contributory negligence as precluded recovery by him.

In due time, respondent presented a motion for a new trial. The motion was based on the grounds (1) that a new trial was required in the interest of justice and (2) that there was no evidence, or reasonable inference from the evidence, to justify the verdict, and that it was contrary to law.

The motion was argued to the court, and, at the conclusion of the argument, the court at some length analyzed the evidence and discussed various matters occurring at the trial. .It is apparent from the oral statement made by the judge that he was of the firm belief that the verdict was wrong. As a possible reason for the jury's action, the court intimated that one of its instructions was not as clear as it should have been. As a further, and stronger, possible reason, the court stressed the circumstance that, upon the examination of the jurors on their *voir dire*, they were repeatedly asked whether they would be influenced by the fact that the respondent was a police officer; and the judge made the observation that in his opinion there is such general prejudice against police officers that it is next to impossible for such an officer to get a fair trial in any matter in which he is concerned. Concluding its remarks, the court stated:

"I am going to grant the motion for a new trial, and when you prepare this order, prepare it just as the new trial was granted."

Thereupon, the following dialogue between court and counsel occurred:

"Mr. Davis [Counsel for appellant]: Will your Honor indicate the ground upon which the motion for a new trial is granted? The Court: No, just this statement. Mr. Davis: May the record show the refusal of the Court to indicate the grounds upon which the motion was granted? The Court: Yes."

The order granting the new trial was general and unrestricted in its terms. It did not show upon which of the grounds stated in the motion the order was based.

The sole question in this case is whether the trial court committed reversible error in granting the motion for a new trial. The answer to that question must be determined in light of certain well-established rules pronounced by this court.

 Where the record shows that the motion for a new trial was made on several grounds, but does not show upon

which of them the ruling of the court was based, the order will not be reversed, if it was within the sound discretion of the court to make it upon any of the grounds stated. *Rotting v. Cleman,* 12 Wash. 615, 41 Pac. 907; *Morehouse v. Everett,* 136 Wash. 112, 238 Pac. 897; *Davis v. Riegel,* 182 Wash. 1, 44 P. (2d) 771; *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410; *Henry v. Larsen,* 19 Wn. (2d) 690, 143 P. (2d) 841.

■ Where the order granting a motion for a new trial is general and does not specify the ground or grounds upon which it was based, the inquiry of this court is limited to the determination of the question whether the evidence was sufficient to take the case to the jury. *Rambo v. Puget Sound Nav. Co.,* 12 Wn. (2d) 637, 123 P. (2d) 355; *Hobba v. Postal Telegraph-Cable Co.,* 19 Wn. (2d) 102, 141 P. (2d) 648; *Henry v. Larsen, supra; State v. McDaniels,* 30 Wn. (2d) 76, 190 P. (2d) 705.

In such case, unless we can say that the verdict of the jury was, as a matter of law, the only verdict that could be rendered, the order granting the new trial must be affirmed. *Henry v. Larsen, supra.*

■ This court will not take cognizance of any reasons assigned by the trial court in granting a motion for a new trial unless such reasons are incorporated in the formal order. *Wood v. Hallenbarter,* 12 Wn. (2d) 576, 122 P. (2d) 798; *Rambo v. Puget Sound Nav. Co., supra; Henry v. Larsen, supra; Bond v. Ovens,* 20 Wn. (2d) 354, 147 P. (2d) 514.

■ The trial courts have wide discretion in granting or refusing to grant new trials, and the exercise of this discretion in granting a new trial will not be interfered with except in situations where only questions of law are involved. *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993; *Wood v. Hallenbarter, supra.*

■ Where the evidence upon a material issue in a case is conflicting, but sufficient to take the case to the jury, and there are no purely legal questions involved, it is within the sound discretion of the trial court to grant or deny a motion for new trial, and the ruling of the court on such motion will

not be interfered with unless it is clear, from the record, that the court has abused its discretion. *Ahrens v. Anderson, supra,* and cases therein cited.

A much stronger showing of abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. *Ahrens v. Anderson, supra,* and cases therein cited.

If the trial court, in the proper exercise of its discretion, is satisfied that substantial justice has not been done in a given case, it is the right and duty of the court to set the verdict aside. *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947; *Davis v. Riegel, supra; Nagle v. Powell,* 5 Wn. (2d) 215, 105 P. (2d) 1; *State v. Elliott,* 6 Wn. (2d) 393, 107 P. (2d) 927; *Bond v. Ovens, supra; Starr v. Baird,* 25 Wn. (2d) 381, 170 P. (2d) 655.

Rem. Rev. Stat. (Sup.), § 399 (7), providing that a new trial may be granted upon the ground "that there is no evidence or reasonable inference from evidence to justify the verdict" does not restrict the inherent power of the court to grant a new trial when the court is satisfied that substantial justice has not been done. *Brammer v. Lappenbusch, supra; Davis v. Riegel, supra; Corbaley v. Pierce County, supra.*

Applying these several rules to the case at bar, we note the following incidents and factors: Respondent's motion for a new trial was made on several grounds, but the order granting the new trial does not specify or disclose the ground upon which the ruling was made. The evidence upon the material issues in the case was conflicting, and was clearly sufficient to take the case to the jury. The trial court was called upon to exercise its discretion in ruling on the motion and, in doing so, emphatically declared that substantial justice had not been done.

Under these circumstances, and upon the record as we read it, we cannot say that the verdict rendered by the jury was, as a matter of law, the only verdict that could have been rendered, nor can we say that the trial court abused

its discretion in granting the motion for a new trial. Upon the basis of this conclusion, the order granting a new trial will be affirmed.

MALLERY, C. J., BEALS, JEFFERS, and HILL, JJ., concur.