Argued January 15; affirmed February 5, 1935

# STEELE *v.* HEMMERS
## (40 P. (2d) 1022)

*A. L. Veazie,* of Portland (Veazie & Veazie, of Portland, on the brief), for appellant.

*L. V. Lundburg,* of Portland (B. A. Green and Fred Ross, both of Portland, on the brief), for respondent.

BELT, J.   This is a personal injury action arising out of an automobile collision. It was tried by the court without a jury. From a judgment in favor of the plaintiff, the defendant appeals.

At the time of the accident on the night of November 12, 1932, the Buick automobile owned by the defendant was being driven by Fred Hemmers, the defendant's 26-year-old son. There were five other young persons in the car, one of whom was Fred's brother Eldon. It was a joy ride in which "booze" played a part. The plaintiff, who was riding as a guest in the

other automobile, sustained severe injuries. There is no question as to the negligence as charged in the complaint or the extent of the damages.

The sole question, as presented by the motion for a directed verdict, is whether there is any evidence tending to show that, at the time of the accident, the Buick automobile was being driven with the express or implied consent of the defendant owner. The theory of the defense is that, on the night in question, the car was surreptitiously taken from the garage in violation of the express order of the father.

It is conceded by the defendant that the automobile was purchased as a family car and that it was used as such by his two sons on various occasions prior and subsequent to the time of the accident. Neither the defendant nor his wife drove the car. It is the contention of the father that after his liability insurance on the car expired in July, 1932, he had an understanding and agreement with his boys that "we would just leave the insurance go and keep this car off the road at nights and only use it for family purposes * * *. Night trips we considered were dangerous trips, and we didn't want them to use the car; in fact, I strictly forbade them to take the car". In the trial of the case, counsel for defendant thus stated his position: "We don't question he had the car, and if there was something they needed to use it for in the day-time and he wanted it used, he would have them use it, but our contention is, as I said in the opening statement, he had forbidden them to take it out nights for any joy riding."

This court, contrary to the views of the writer, has definitely accepted the "family purpose" doctrine: *McDowell v. Hurner,* 142 Or. 617 (13 P. (2d) 600, 20 P. (2d) 395, 88 A. L. R. 578). It is well established in this

and other jurisdictions that proof of ownership constitutes a prima facie case of agency: *Judson v. Bee Hive Auto Co.,* 136 Or. 1 (294 P. 588, 297 P. 1050, 74 A. L. R. 944), and cases therein cited. It may also be stated that, if the automobile was being driven on the night in question by the son for purposes of his own without the express or implied consent of the defendant, the latter would incur no liability by reason of his son's negligence: Huddy Cyc. Automobile Law (9th Ed.), Vol. 7–8, § 127; Berry Automobiles (6th Ed.), Vol. 2, § 1481; Blashfield Cyc. Automobile Law, Vol. 2, p. 1477. In view of these well recognized legal principles, the vital question is thus presented: Can it be said, as a matter of law, that the evidence on behalf of the defendant has overcome the prima facie case of agency? Is the evidence relative to the use of the car of such conclusive character that the trial court, sitting without a jury, was bound to give the same full weight and credit? Or, were there facts and circumstances that might cause a reasonable-minded person to believe that the defendant father had impliedly consented to his son's use of the car?

Let us briefly review the evidence. The automobile was purchased in 1931. Neither defendant nor his wife ever drove the same, but it was used generally for the convenience and pleasure of the family. Each of the sons, prior to July, 1932—when the insurance expired—used it frequently for his own pleasure with the knowledge and consent of the defendant. After July, according to the testimony of the defendant and his sons, there was a more limited use by the boys, although there was no objection unless "night trips" were taken.

Thomas Edmonston, a young man who was one of the occupants of the car at the time of the accident

testified that, between the date of the alleged instruction of the father to his boys not to use the car and the date of the accident, he had ridden in the Buick several times when it was driven by Fred or Elton, from The Oaks skating rink in Portland to his home.

■ Don Hutchins, another young man who was an occupant of the Buick car, testified that he had ridden many times in such car when it was being driven by one of the Hemmers boys. He said: "I have rode with him a lot of times since and he drives all right, and I rode with him a few times around the country there before, during the summer." There is evidence to the effect that defendant, in the presence of his sons, told several persons about the lapse of his insurance policy and stated that he had forbidden the boys to drive the car at night. He was thus cross-examined relative to such statement alleged to have been made to Mr. Drew, the storekeeper:

"Q. He (Drew) said on three or four occasions,—once you had Fred up there, and another time you had Eldon, and you told him on different occasions, told the boys, and you wanted him to know something about it.

"A. Wanted Mr. Drew to know?

"Q. Yes, so he could come here and testify as a witness.

"A. *Of course I knew away ahead of time that this accident was going to happen, and I went and got prepared for it.*

"Q. Yes, that's what I am telling you. I believe that's all.

"THE WITNESS: *Yes, I knew away ahead of time; that's the reason I spread this stuff around the community.*

"Q. (By Mr. Veazie of counsel for defendant): You say you did it? You meant that sarcastically?

"A. Yes."

It may be, as suggested by counsel, that defendant was speaking in a sarcastic vein. We do not know. At any rate, such testimony was a matter for consideration of the court.

The accident occurred at about 10:30 p. m. and about three hours thereafter a deputy sheriff went to the scene of the accident. This officer testified that he then and there had a conversation with the defendant about his boys driving the car and that the father said "he always talked to his boys and asked them to drive carefully and try to keep out of accidents". No reference was made to any instructions not to take the car out on such occasions.

There was also evidence that, before and after the accident, the car was customarily driven by one or the other of the boys when taking the smaller Hemmers children to and from school at Gresham.

■ Under this state of the record we are not prepared to say, as a matter of law, that there is no evidence tending to show an implied consent to use this automobile on the night of the accident. The mere fact that the father's testimony is uncontradicted does not necessarily preclude recovery: *Miller v. Service and Sales, Inc.*, ante p. 11 (38 P. (2d) 995) ; *Crenshaw v. Chambers* (Tex.), 283 S. W. 1095; Huddy Cyc. Automobile Law (9th Ed.), § 127. If such testimony were to be received as conclusive, the "family purpose" doctrine would be practically nullified. Had the accident occurred in the daytime there would be little question about the agency of the son. We think the doctrine does not die with the setting of the sun.

■ When there is evidence tending to show such a customary and continued use of the automobile by the son for his own purposes, it may reasonbly be inferred

therefrom that the father had impliedly consented to its use at the time of this accident. The findings of the trial court on this issue of fact are, under the well established rule in this state, equivalent to the verdict of a jury. We are not concerned with the weight of the evidence, but rather with the question as to whether there is any evidence to sustain the judgment, and the answer is in the affirmative. Defendant was not entitled to a directed verdict.

■ In the course of the oral argument defendant, for the first time, challenged the sufficiency of the complaint. We are not unmindful that the question as to whether a complaint alleges facts sufficient to constitute a cause of action may be raised for the first time on appeal, but when a complaint is thus challenged it is entitled to every reasonable intendment in its favor. Tested by this fundamental rule, it is believed that the complaint is sufficient. We agree with the statement of appellant in his original brief: "The sole question presented herein is whether the finding made by the court to the effect that said Fred Hemmers, at the time and place of the accident, was using his father's automobile with the latter's consent, is sustained by the evidence."

The judgment of the lower court is affirmed.

CAMPBELL, C. J., and ROSSMAN and KELLY, JJ., concur.