Argued at Pendleton October 31, 1944; affirmed January 16; rehearing denied February 27, 1945

## GOSSETT *v.* VAN EGMOND
(155 P. (2d) 304)

Before BAILEY, Chief Justice, and ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

138

*P. J. Gallagher,* of Ontario (Gallagher & Gallagher, of Ontario, on the brief), for appellant.

*Charles W. Swan,* of Vale, for respondent.

HAY, J.

This was an action for damages for the death of the plaintiff's minor son through the alleged negligence of the minor son of the defendant.

The amended complaint states, in substance, as follows: The defendant, Henry Van Egmond, is the father of John Van Egmond. On August 8, 1941, the date of the accident herein involved, John Van Egmond was twenty years of age, and resided in his father's home as a member of his family. Henry Van Egmond owned a certain Ford V-8 sedan, which was bought and used by him and his family in his farm business and as a family car. John Van Egmond was a careless, reckless and mentally incompetent automobile driver. The State of Oregon, because of his mental incompetency, had denied him a motor vehicle operator's license. Henry Van Egmond, knowing his son to be careless, reckless and incompetent, and that an operator's license had been denied him, negligently permitted him, on frequent occasions, to drive the Ford car. At the time of the accident, John Van Egmond was driving the Ford with the consent, knowledge and permission of his father and within the purpose for which the car was purchased. Plaintiff was the father of Newell Gossett, a child of eleven years of age. The accident happened at a point on the

Central Oregon Highway about three and one-half miles east of Vale. There is no material change in elevation or obstruction to vision along the highway for more than a mile east of that point. On the date mentioned, at about 8:30 o'clock in the evening, a Lafayette automobile belonging to one Lawrence Bailey, which, by reason of engine trouble, could not be driven under its own power, had been stopped on the north side of the highway, and a Plymouth automobile belonging to plaintiff had been driven in front of it for the purpose of towing it to Vale. More than sixteen feet of the main-traveled portion of the highway opposite and to the south of the Plymouth and Lafayette cars had been left free for the passage of other vehicles. There was a clear and unobstructed view of the highway for more than two hundred feet in either direction. Both cars were equipped with the front and rear lights required by law, which lights were burning. John Van Egmond was driving his father's Ford westerly on the highway and approached the Lafayette and Plymouth cars from the east. He was driving upon the extreme right side of the road, at a speed in excess of fifty-five miles an hour, which was greater than was reasonable and prudent under the existing circumstances. So driving, he negligently drove into the rear of the Lafayette, causing it to strike the Plymouth with great force and to overturn. Newell Gossett, with his sister, Elizabeth Bailey, was standing at the right side of the Plymouth, entirely off the traveled portion of the highway. He sustained physical injuries in the collision, as a result of which he died almost instantly. Damages in the sum of $10,000 were demanded.

For answer, the defendant admitted the ownership of the Ford car, and that John Van Egmond was his

minor son and resided in his home as a member of his family. He admitted further the happening of the accident and the death of plaintiff's son, but denied generally the remaining allegations of the amended complaint. For an affirmative answer, he alleged that the accident was directly and proximately due to the negligence of Lawrence Bailey, of the decedent, Newell Gossett, and of the plaintiff, who, he said, were engaged in a joint venture in the removal of the disabled Lafayette from the highway. Elizabeth Bailey, he alleged, was driving the Lafayette when it became disabled and she abandoned it. Thereafter, her husband, Lawrence Bailey, applied to plaintiff for assistance in removing the Lafayette from the highway. Thereupon plaintiff sent his son, Newell Gossett, in charge of the Plymouth, and in company with Lawrence Bailey, to accomplish this purpose. They set about removing the car and, in so doing, attempted to push it with the Plymouth car. Thereafter, they stopped the Lafayette on the traveled portion of the highway and negligently, and in disregard of their own safety and of the safety of other travelers, prepared to tow it. In so doing, they negligently failed to place suitable, or any, signs or signals upon the roadway to warn drivers of oncoming vehicles of the fact that the Lafayette and the Plymouth were stationary on the highway, contrary to the provisions of section 115-353, O. C. L. A. Further, in disregard of their own safety and the safety of other travelers on said highway, they left the Lafayette standing upon the paved or improved and main-traveled portion of the highway, when it was entirely practicable to park it and "said towing car" off the highway, contrary to the provisions of said section.

For a second affirmative defense, the defendant alleged: The death of Newell Gossett was brought about by his contributory negligence, in that, notwithstanding that he was fully capable of realizing and appreciating the danger of working about parked automobiles upon a public highway at night, he failed to keep any lookout for approaching traffic and particularly for the defendant's Ford car; and, although he could have removed himself to a place of safety when the accident was imminent, he failed to do so, but negligently placed himself in such close proximity to the parked automobile that he was injured through the resulting collision. The affirmative answers were denied by the reply.

Upon trial by jury, a verdict for $5,000 was rendered against defendant, and judgment was entered thereon. Defendant appeals.

At the appropriate times, defendant moved for involuntary nonsuit and for a directed verdict, and he bases error upon the refusal of the court to allow such motions, and upon its refusal to instruct the jury in accordance with his requests.

John Van Egmond, the driver of the Ford car, had been mentally irresponsible since early childhood, as the result of injuries which he sustained in a fall from a tree. Up to the date of the accident, he had lived continuously as a member of the defendant's household. A big, strong boy, physically, he worked upon and took care of the defendant's 160-acre farm. He had not done well at school, having progressed only through the sixth grade. Because of his mental condition, the State of Oregon denied him a motor vehicle operator's license, of which fact the defendant was aware. On the occasion of the accident, he was driv-

ing his father's Ford, and was accompanied by another young man. His very negligent conduct on that occasion was so patent that appellant does not even discuss it, nor need we do so.

The defendant testified that he had instructed the members of his family not to drive the car, because he used it and had it for his business. His wife drove once in a while. John had driven it maybe five or six times when there was business to be done and he, the defendant, was not at home. On those occasions, however, he said that he "had an idea" that "the Mrs." would be with John. He had driven the car occasionally when the defendant himself was with him. He had never, to the defendant's knowledge, taken the car out for his own pleasure, except on the evening of the accident. Defendant permitted his daughter Catherine, "after she got her license", to drive the car. She testified that John had taken the car on one occasion to go to a service station to get some candy and cigarets. Her father was unaware of this at the time, but learned of it afterwards. She herself had no general permission to drive the car, but was allowed to drive it on specific trips which her father desired her to make in connection with the business of the farm or of the household. The defendant's wife testified that the children were forbidden to use the car except when she was with them, and that she herself used it only when necessary "for the purposes of the family". Her husband, she said, was "stingy about his gas".

Several witnesses, most of them neighbors of the Van Egmonds, testified that they had seen John drive the defendant's Ford on various occasions prior to the accident.

■ The "family purpose" doctrine is based upon the theory that, when an automobile is maintained by the

owner for the pleasure or convenience of his family, a member of the family, who is using it for his own pleasure or convenience, is the agent of the owner, and the latter is responsible for his negligence. *Foster v. Farra,* 117 Or. 286, 243 P. 778; *McDowell v. Hurner,* 142 Or. 611, 13 P. (2d) 600, 20 P. (2d) 395, 88 A. L. R. 578; Cooley on Torts, 4 ed., section 525.

 Ownership of the car by the defendant having been admitted, the fact that, at the time of the accident, it was being driven by his son, a member of his family and household, made a prima facie case of agency. *Steele v. Hemmers,* 149 Or. 381, 40 P. (2d) 1022; *Foster v. Farra,* supra; *Birch v. Abercrombie,* 74 Wash. 486, 133 P. 1020, 50 L. R. A. (N. S.) 59. In addition to the prima facie case, however, there was evidence, as stated, that, on various occasions prior to the accident, the son had driven the car. Mrs. Van Egmond used it for family purposes. The daughter also used it "after she got her license". Notwithstanding the fact that he knew that his son was not licensed, the defendant admitted that he permitted his son to drive the car "a couple of times" for business purposes. In the face of such evidence and admissions, the uncontradicted testimony of the defendant, his wife and daughter, to the effect that members of the family were forbidden to drive the car except on business, and even the positive testimony of the defendant that, on the night of the accident, his son took the car surreptitiously and without his knowledge or permission, did not, as a matter of law, require the court to direct a verdict for the defendant. It is true that the court should not refuse to direct a verdict merely because the evidence in support of the motion comes from the mouths of interested witnesses, but as a general rule,

it is for the jury to say whether or not a prima facie case, based upon inference, has been overcome. Only in the extreme instances, when but one reasonable inference can be drawn from the facts, should the court direct a verdict. *Miller v. Service & Sales, Inc.*, 149 Or. 11, 38 P. (2d) 995, 96 A. L. R. 628. We cannot say that such was the situation here. The "family purpose" doctrine has been adopted in this state as a part of the law of agency. If the testimony of interested witnesses, under the circumstances before us, "were to be received as conclusive, the 'family purpose' doctrine would be practically nullified". There was evidence from which a reasonably-minded person might have determined that the defendant had impliedly consented to the use of the car by his son. Its weight was for the jury. *Steele v. Hemmers,* supra; *Foster v. Farra,* supra; *McCallister v. Farra,* 117 Or. 278, 243 P. 785. No error was committed by the trial court in denying the motions for nonsuit and for directed verdict.

John Van Egmond did not testify. It was shown that, at the time of the trial, he was at Mountain Home, Idaho, but no explanation was given why he was not called as a witness.

■■ Appellant insists that the fact that his son drove the car under the circumstances disclosed by plaintiff's witnesses furnishes no basis for an inference that the son upon such occasions, was using it for his own pleasure. That is true. However, one must consider also the other evidence. For example: The admissions of Mrs. Van Egmond that she used the car for family purposes; the testimony of the daughter that her mother used it "if she had something to do on Saturday afternoon, perhaps for groceries, if Dad wasn't using the car, and she would take us places if we had

to go before I got my license, and Johnnie and I were not to use the car before we got our licenses. After I got my license I was permitted to use it, only with Dad's permission''; her further testimony that, on one occasion, John used the car for his own convenience, without his father's knowledge, although the father later learned of it; the fact that, despite the claim that John was forbidden to use the car until he should receive a license to drive, nevertheless he did use it frequently; and the further fact that the defendant obviously tried to minimize the number of occasions upon which John drove the car. All of these circumstances, we think, tended to establish plaintiff's allegation that the car was a family car, and to weaken defendant's evidence to the contrary.

 It is the general rule that where a parent's negligence makes it possible for his child to gain control of an agency which, in the child's incompetent hands, may become dangerous to others, he may be held liable for resulting injuries. Negligence of that description is charged against the defendant in the present case.

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control.

Comment:

a. While the father as head of the family group is no longer responsible for the actions of all the members of his household or even for those of his minor child, he is responsible for their conduct in so far as he has the ability to control it. * * *

b. The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing. The parent is not under a duty so to discipline his child as to make it amenable to parental control when its exercise becomes necessary to the safety of others.

c. In order that the parent may be liable under the rule stated in this Section, it is not necessary that the actions of the child which he fails to prevent or control are such as to make the child himself subject to liability. The child may be so young as to be incapable of negligence, but this does not absolve the parent from the performance of his duty to exercise reasonable care to control the child's conduct. Indeed, the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it."

Restatement, Torts, section 316.

See also *Norton v Payne,* 154 Wash. 241, 281 P. 991; *Hopkins v. Droppers,* 184 Wis. 400, 198 N. W. 738, 36 A. L. R. 1156; Restatement, Torts, section 877 (c) and Comment; Cooley on Torts, 4 ed., section 66, note 29; Idem, section 526, notes 81, 82.

 Under the evidence, it is hardly open to question that John Van Egmond was incompetent to be intrusted with the operation of an automobile upon the public highways. He had acquired a car of his own which he drove continuously, and this fact is urged by appellant as an argument to buttress his contention that he had denied John the use of his, the appellant's car. The argument loses its force when all the circumstances are considered. The son was an unemancipated minor and a member of his father's household. He was mentally incompetent, and his father knew it. No doubt, as

a matter of law, it was the father's duty, if reasonably possible, to prevent the son from using even his own car under such circumstances. *Robinson v. Ebert,* 180 Wash. 387, 39 P. (2d) 992. The child being a minor and residing in his father's family, the presumption is that he was unemancipated, and the father had the burden of alleging and proving the contrary, if he sought to rely thereon. 46 C. J., Parent and Child, section 200. Whether or not the son had permission to use his father's car on the night of the accident, we think that an affirmative, legal duty rested upon the defendant, under all the circumstances, to have taken such positive measures as might reasonably have been necessary to prevent such use. While it is true that an automobile, in proper repair, is not, in the hands of a competent and careful driver, a dangerous instrumentality (5 Am. Jur., Automobiles, section 11), it becomes such in the hands of such a driver as was the boy, John Van Egmond. *McDowell v. Hurner,* supra (142 Or. 611, 20 P. (2d) 395); *Gardiner v. Solomon,* 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380. That the defendant was careless of the safety of others, in this connection, is indicated by the fact that he permitted his incompetent and unlicensed son to drive the car, provided he drove it upon the defendant's business. Thereby he committed a misdemeanor under the law (section 115-224, O. C. L. A.), and the fact that he did so on frequent occasions tends to deprive him of any presumption that he did not willingly violate the law in like manner in the particular instance of the son's use of the car on the night of the accident. It has been held by this court that, when the owner of an automobile permits it to be driven on a public street by a child who is too young to be licensed to operate motor vehicles, and thereby makes it possible for such child negligently to inflict injury

148

upon other persons using the highway, he is negligent, and his negligence, combining with that of the child, may render him liable for any resulting injury. *Miller v. Semler,* 137 Or. 610, 2 P. (2d) 233, 3 P. (2d) 987. The same reasoning applies with even stronger force to the case of an automobile owner who negligently fails to prevent his unemancipated, incompetent minor son, a member of his family and household, who, to his knowledge, has been denied an operator's license by reason of mental incompetency, from driving his car upon the public highways. *Rocca v. Steinmetz,* 61 Cal. App. 102, 214 P. 257; Berry, Automobiles, 5 ed., section 1197.

■■ Appellant contends that plaintiff is not entitled to recover on the theory that defendant permitted his car to be driven by an incompetent person, because the evidence does not show that the car was used with the appellant's permission or knowledge. Under the circumstances here presented, however, the negligence of the defendant consisted in failing to take affirmative measures to prevent the use of his car by his incompetent son. It was not necessary for plaintiff to show that the son's use of the car was by his father's permission. There was sufficient evidence to support a finding by the jury that the father was aware of his son's incompetency to drive an automobile upon the public highways without danger to others.

■ A further argument advanced by the appellant is that it was not shown that he was aware that his son had driven the car on the occasions regarding which the plaintiff's witnesses testified. It cannot be disputed that he was aware that his son had driven the car upon farm business, for he himself testifed that he had permitted him to do so. Indeed, the circum-

stances warrant the construction that, for business purposes, he ordered him to drive. As to the other occasions, he may have known of them, although he may have "had an idea" that his wife was with the boy. The evidence was sufficient to make a jury question.

Appellant requested the court to instruct the jury as follows:

"I instruct you that before you can find for the plaintiff, you also must first find that John Van Egmond was guilty of negligence in the operation of the Defendant's car.

"You should take into consideration all of the facts and circumstances surrounding the accident, in determining whether John Van Egmond was or was not guilty of negligence in the operation of the car which was involved in the collision and in that regard you may consider whether or not the car that was about to be towed had a red light displayed in such a manner that it could be seen for a distance of 500 feet by approaching drivers. You may also take into consideration the fact testified to by Lawrence Bailey—that he endeavored to attract the attention of the driver of the Van Egmond car, as it might bear on his ability to see the parked car.

"You may also take into consideration the fact that John Van Egmond had a right to assume that other persons using the highway would do so in a manner prescribed by law—that is that if there was a car parked on the traveled portion of the highway, it would display a red light; and that if it was parked preparatory to being towed, that a suitable sign or signal would be placed on said highway warning the drivers of oncoming vehicles of such towing operations."

■ Lawrence Bailey, who was standing at the rear of the Lafayette when John Van Egmond's car approached the scene, testified that, up to the time when the cars were stopped in the position in which

they were at the time of the collision, the lights on both cars were burning, and that he did not turn them off at any time. He would not swear specifically that the rear lights on the Lafayette were burning, but said that they had been "working all the time", and that he had never had any trouble with them. Appellant insists that this evidence is not sufficient to show that the Lafayette rear lights were burning, but we think that, under the circumstances, it was sufficient to authorize the jury to find that they were. There was no conflicting testimony whatever. Cf. *Martin v. Oregon Stages,* 129 Or. 435, 446, 277 P. 291.

■ That part of the requested instruction which stated that John Van Egmond had a right to assume that other persons using the highway would do so in a manner prescribed by law, was not applicable to the factual situation as disclosed by the evidence. The undisputed evidence showed that the Lafayette and Plymouth cars were standing on the right shoulder of the highway, with more than sixteen feet of the main traveled portion left unobstructed for the passage of other vehicles. There was no suggestion to the contrary. In other words, there was no evidence to which the requested instruction could properly be applied. *Quinn v. Hawley Pulp & Paper Co.,* 85 Or. 630, 167 P. 571.

■■ That portion of the instruction which referred to the necessity, when a car is parked upon the highway preparatory to being towed, of setting out suitable signs or signals on the highway to warn the drivers of oncoming vehicles of such towing operations, is based upon section 115-353, O. C. L. A., which reads in part as follows:

"Vehicles not to be parked or left standing on highway: Removal of vehicles: Exception as to

emergency stops and emergency vehicles: Warning signs or signals when wrecker or tow car stopped on highway. (a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than 16 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway.

\* \* \*

"(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position, nor to emergency cars or vehicles of the police, traffic or sheriff's office, or the fire department or ambulances where such vehicles at the time are actually used in an emergency which necessitates a violation of the provisions hereof.

"(d) Whenever the operator of a wrecker or tow-car engaged in the salvaging of another vehicle shall find it necessary to stop his vehicle so as to obstruct the roadway, such operator shall place at a suitable distance in each direction upon such roadway suitable signs or signals warning the drivers of oncoming vehicles of such operations; and such signs or signals shall be of a design approved by the state highway commission."

The Lafayette car, as the evidence showed without contradiction, had become disabled, within the purview of subdivision (c), supra. The provisions of section 115-353, O. C. L. A., therefore, had no application to such car. Moreover, as has been stated, on stopping the cars for the purpose of changing the operation from a pushing to a towing one, they were placed upon the right shoulder of the road, one immediately in front of the other, with ample legal clearance left on the main-traveled portion. According to eye-witnesses, only a very brief period elapsed between the stopping of the cars and the happening of the collision—more than one witness said the elapsed time was about one minute. It was impracticable to get the cars farther off the main-traveled portion of the highway, as they were on the verge of the ditch or borrow-pit. This is the undisputed evidence. Giving to the statute ''a reasonable and workable construction'', we are of the opinion that these cars were not parked or left standing on the highway, within the contemplation of the statute. *Dare v. Boss,* 111 Or. 190, 224 P. 646; *Townsend v. Jaloff,* 124 Or. 644, 264 P. 349; *Frame v. Arrow Towing Service,* 155 Or. 522, 64 P. (2d) 1312.

■ Moreover, we think that it would be a distortion of the statute to apply to the plaintiff's Plymouth car, under the circumstances in this case, the designation of a ''wrecker or tow-car'', which appellant sought to do. We think that what the legislature had in mind, in using those terms, were motor vehicles equipped and intended for use in removing wrecked or disabled vehicles from roads or highways. This interpretation is justified, not only by the tenor of the statute as a whole, but particularly by subdivision (d), which requires the operator of a wrecker or tow car who, in

his salvage operations, finds it necessary to stop his vehicle so as to obstruct the highway, to place in each (either) direction upon the road, suitable signs or signals of a design approved by the state highway commission, to warn the drivers of oncoming vehicles of such operations. That such provisions apply to ordinary automobiles, even when used as tow cars, is a novel suggestion which does not appeal to us as being a reasonable construction of the language of the statute. It is to be observed that the requested instruction dealt mainly with matters which were pleaded defensively in defendant's first further and separate answer, and nowhere else, which separate answer was based entirely upon the alleged negligent conduct of Lawrence Bailey, Newell Gossett and plaintiff, in the operation of attempting to remove the disabled Lafayette from the highway "as a joint venture and enterprise". Proof of a joint venture failed completely, and the court, without objection by defendant, instructed the jury to disregard it. The Plymouth car was driven by Elizabeth Bailey, the Lafayette by Lawrence Bailey. Newell Gossett, plaintiff's young son, merely went along for the ride. The court's instructions, notwithstanding the failure of proof of a joint venture, included an instruction which correctly, if abstractly, stated the law with reference to cars which have been parked or left temporarily standing upon a highway. The giving of such instruction was more favorable to defendant than he was entitled to under the pleadings and the evidence. No error was committed by the court's refusal to give the instruction which defendant requested.

As we view the record, this case was fairly tried and the jury was properly instructed. The judgment is affirmed, with costs.