Argued June 5, reversed and remanded July 18, 1962

# KRAXBERGER *v.* ROGERS

373 P. 2d 647

*Donald H. Joyce,* Portland, argued the cause and filed a brief for appellant.

*John C. Anicker,* Oregon City, argued the cause for respondent. On the brief were Jack, Goodwin & Anicker.

Before MCALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

LUSK, J.

This is an appeal by the defendant from a judgment for the plaintiff based on the verdict of a jury in an action to recover damages for personal injuries arising out of an automobile accident.

Plaintiff was injured while riding in a car driven by her husband which collided with a Chevrolet pickup truck owned by the defendant and operated by his stepson Lonnie Rogers, then 16 years of age. The accident occurred in the early hours of the morning when the truck stalled on the highway apparently because of a defective carburetor. The car in which plaintiff was riding came from behind and crashed into the truck. Plaintiff, in addition to other allegations of negligence, claimed that there were no lights burning on the truck.

No question is raised here respecting the issues of negligence and damage. All the assignments of error relate to the defendant's liability, that is, whether he can be properly held to respond for his stepson's negligence under the so-called "family car" or "family purpose" doctrine. The amended complaint alleged that the car driven by Lonnie Rogers "was owned by the defendant and maintained for family purposes." This question was submitted to the jury by the court in its instructions and, as their verdict indicates, was resolved against the defendant.

It is contended by the defendant that the court erred in the admission of certain evidence and in denying his motions for a directed verdict and judgment n. o. v.

It appears from the record that in November of 1960 a trial was had in the circuit court for Marion county in a case brought by the insurance commissioner of the state of Oregon against the state treasurer to have determined the distribution of moneys in the hands of the latter which had been deposited by an insolvent insurance company as security for payment of its liabilities. We assume, although it does not clearly appear in the record, that this pro-

ceeding was brought pursuant to ORS 736.540 and that the insurance company in question had issued a policy of liability insurance to the defendant and that one of the questions then before the court was whether the policy covered losses growing out of the accident here in question.

In the case at bar the plaintiff was permitted by the court, over the objection of the defendant, to show by the official court reporter who reported the trial of the case in Marion county, that Mr. Glenn R. Jack, appearing therein as attorney for the husband of the plaintiff here, called the defendant as an adverse witness and that the defendant at that time gave the following testimony:

"'Q Mr. Rogers, you are the owner of the vehicle that was involved in the accident in which Ralph Kraxberger and his wife, Elizabeth Kraxberger, were riding?
"A Yes, sir.

"Q Was that a family automobile?'—
"A Yes.

"Q And Lonnie at that time was a member of your family?
"A Yes, sir."

When the foregoing testimony was read into the record at the trial of the present case, the question "Was that a family automobile?" was objected to by counsel for the defendant on the ground that it called for a legal conclusion. The court overruled the objection.

At the trial of this case the defendant testified as follows with reference to the use of the automobile: The car in question was a Chevrolet pick-up truck, the title to which was in the name of the defendant. He lived on a farm about a mile and a half from

Canby, but at the time of the accident he was engaged in the construction business (remodeling) in Portland and he used the truck in going to and from work and to carry tools and equipment. There was only one key to the truck and he kept that in his pocket. The truck was kept in the garage which was always locked and he had the only key to the garage. He had never permitted Lonnie to use the truck on a public highway except once when he and Lonnie were driving home from Canby. At that time Lonnie had a learner's permit under which he could drive only when there was a licensed driver with him and he permitted his stepson to drive on this occasion for the experience it would give him. His wife seldom drove the truck and then only when he sent her after supplies "or something." He explained: "To be in the contracting business, especially remodeling, if you have a vehicle it's practically your right leg. You can't get along without it." He had another automobile, a "pleasure car", title to which was registered in the names of Mrs. Rogers and himself. He and his wife each had a set of keys to this car.

The accident occurred on a highway about a half mile from the defendant's house between the hours of four and 4:30 in the morning on April 18, 1958. The previous night the defendant retired between 9:30 and ten o'clock. He had locked the garage door with the truck inside, and the keys to the garage and the vehicle were in his pocket. When he went to bed his wife, Lonnie, and a younger son were all at home. Between four and 4:30 o'clock in the morning he was awakened by a knocking at the door and, going to the door, he found there a boy named Ronald Coleman who had been in the automobile with Lonnie at the time of the accident and told the defendant

about it. The defendant dressed and went to the scene of the accident. He was asked if he had any conversation with Mrs. Kraxberger and answered:

"A Nothing, only to ask her if she was hurt badly, and she said, 'No,' she wasn't, and I reprimanded the boy by asking him, 'What are you doing out here with my pickup?' and she said, 'Don't blame the boys too much. It's not their fault.' But at the time it astounded me why she said this, because I don't see how she could have seen the boys from what I had seen of the accident at that time."

The plaintiff testified that she heard the defendant talking to his son and that she told him that she did not want to listen to him, he should wait until tomorrow to say it, and that he was not too happy with his son. She recalled telling the defendant not to be too hard on the boys for the reason as she said that "I was in no mood to hear the language he was using at the time." The defendant left the scene of the accident and, going to his garage, discovered that entrance to it had been gained by removing the door. He testified:

"Q Tell the Court and jury what you found.

"A I found a two-inch pipe at the foot of the door, a sliding door that slides on a track along the edge of the garage, four-foot door, eight foot high, and there's a hasp on the inside of the one side of the door that you slip over it. You bolt in the rest of the hasp and drop a bolt through it, and on the outside it was a two-inch pipe had been driven in the ground possibly three feet right at the edge of the door to keep the door from being lifted away from the building and permit entrance. That pipe had been worked so that there was about a half inch clearance around the pipe and could be lifted, just lifted out easily and the door pulled away and allowed entrance to the garage.

"Q Then the door, the garage could be still locked, but the pipe was out?

"A The pipe was laying out in the grass.

"Q Had this ever happened before?

"A No, sir."

Mrs. Joseph F. Rogers, the wife of the defendant, was called as a defense witness. She corroborated her husband's testimony to the effect that they retired about ten o'clock on the evening before the accident, that Lonnie was then home and that they were aroused early in the morning by Ronald Coleman pounding on the door and informing them of the accident.

Lonnie Rogers did not appear at the trial, but a deposition given by him was received in evidence. His direct examination by an attorney then representing the defendant was confined to the immediate circumstances of the accident. He was not asked by either attorney whether he had ever driven the pick-up truck before or had permission to drive it on the night in question or had keys to the garage and the pick-up truck and if not how he gained entrance to the garage and got the motor started. On cross-examination he was asked by counsel for the defendant where he had been prior to the accident and answered that he had been "Out there at that kid's house," that he went there "To see him" and "was messing around."

Further on cross-examination, he was asked as to his driving experience prior to the accident and answered: "Oh, three years, probably. I drove around the farm, around my boy friend's farm and around them old back roads out there on the farm." He was not asked by either attorney what car he drove. He testified that he had never taken the Oregon drivers'

license examination. He further testified on cross-examination:

"Q What year Chevrolet pickup was it?

"A '51, I think.

"Q What was the general condition of the pickup?

"A A-1. We kept it in perfect condition because we had to have it to work with.

"Q How long have you been having trouble with the carburetor float on it?

"A Just that night when I started driving it because I was tinkering around with the carburetor earlier that night."

In addition to the foregoing, Sandy Yoder, a nineteen-year old acquaintance of Lonnie Rogers, testified that he had given the following testimony at the trial of the Marion county case:

"Q And do you remember—I don't expect you to remember the date, but the date of this accident that Mr. and Mrs. Kraxberger were involved in with the Rogers automobile.

"A Yes.

"Q Do you remember hearing about it?

"A Yes.

"Q After that did you overhear Lonnie saying anything about the accident?

"A Well, I was sitting in front of him on the bus the morning after it happened, and he was talking to somebody behind me.

"Q What did he say?

"A He was telling them something about him coasting down this hill right in front of his place and he had been out with some friend of his that night, and I guess they snuck out and was coming home and they was coasting down this hill. Their

house is just a little ways down from there and they was coasting down trying to sneak in.

"Q Did he say anything about the condition of the car with reference to lights?

"A Well, yes. They had their lights off and was coasting down the hill trying to steal home."

Yoder was asked by counsel for the defendant whether the answers thus read to him were accurate and answered "I think so."

Patty Yoder, a sister of Sandy Yoder, also testified to the conversation on the school bus. She was asked: "Did you hear him [Lonnie Rogers] say that he had sneaked the car out and sneaked it back?", and answered "Yes."

These two witnesses were called by the plaintiff in rebuttal and their testimony, above recited, was given on cross-examination and without objection on the part of the plaintiff.

The foregoing is a fair summary of all the testimony pertinent to the question whether liability of the defendant for his stepson's negligence has been established.

■ For reasons now to be stated we think that the motions for a directed verdict and judgment n. o. v. were properly denied.

■■ The Constitution of Oregon provides in Article VII, Section 3:

"* * * no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

We have repeatedly said that the word "evidence" in this section means substantial evidence. Whether in a particular case there is evidence having this quality

is, of necessity, for judicial determination, and the question must in every case be resolved without regard to the court's appraisal of the weight and effect of the evidence.

■ The "family purpose" doctrine to which this court is committed is a part of the law of agency. It is based upon the theory that when an automobile is maintained by the owner for the pleasure or convenience of his family, a member of the family who uses it for his own pleasure or convenience with the knowledge and consent of the owner is the agent of the owner and the latter is responsible for his negligence. Under our decisions, ownership of the car by the defendant having been admitted, the fact that at the time of the accident it was being driven by his son, a member of his family, made a prima facie case of agency. *Bolton v. Schimming et al*, 226 Or 330, 332, 360 P2d 540; *Wiebe v. Seely, Administrator,* 215 Or 331, 345, 335 P2d 379; *Gossett v. Van Egmond,* 176 Or 134, 143, 155 P2d 304. Such a case may be overcome by showing that the car was driven on the particular occasion without the express or implied consent of the defendant. *Steele v. Hemmers,* 149 Or 381, 384, 40 P2d 1022. See cases involving cars taken surreptitiously or in violation of orders. Annotations 64 ALR 870, 88 ALR 612, 100 ALR 1026, 132 ALR 988. But before the court can say that the prima facie case has been overcome as a matter of law, the evidence adduced by the defendant must be uncontradicted and free from doubt or suspicion. *Gossett v. Van Egmond,* supra, 176 Or at 144. See *Wiebe v. Seely, Administrator,* supra, 215 Or at 342-344.

■ In the *Wiebe* case we quoted with approval from *Ferdinand v. Agricultural Ins. Co.,* 22 NJ 482, 126 A2d 323, 62 ALR2d 1179, the following statement of

the rule for determining whether uncontradicted testimony may be disbelieved by a jury:

" '* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. * * * [Citing cases]. But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury. * * * [Citing cases].' 62 ALR2d 1186-1187." 215 Or at 343, 344.

See, also, *Rickard v. Ellis,* 230 Or 46, 368 P2d 396. If the defendant's evidence here fails to meet that test, the question of defendant's liability was for the jury.

Had nothing more been shown than the driving of the automobile by Lonnie Rogers on the morning of the accident and the facts as testified to by the defendant together with the statements of Lonnie Rogers on the school bus—hearsay it is true, but nonetheless competent evidence because received without objection—it might have been difficult to say that there was substantial evidence to support the verdict. But, in addition, we have the statement of the defendant made by him as a witness in another proceeding that the Chevrolet pick-up truck was a "family automobile." The statement was an admission and clearly competent evidence. It was not subject to the objection that it was a conclusion or opinion of the witness, for the rule in this jurisdiction is that an

admission by a party may be received in evidence against him even though it assumes the form of an expressed opinion. *Swain v. Oregon Motor Stages,* 160 Or 1, 6, 82 P2d 1084, 118 ALR 1225 with annotation at page 1230. See, also, McCormick on Evidence, 507, § 241. And an admission need not have been against the declarant's interest when made or afterwards. *State v. Anderson,* 10 Or 448, 454; McCormick on Evidence, 504-505, § 239.

> "It is but common sense that a party litigant should have the benefit of extra judicial statements or acts of his adversary which are inconsistent with the position taken by, and the contention of, such adversary before the court." 2 Jones Commentaries on Evidence (2d ed) 1647, § 899.

See, also, id. 1651, § 901.

■ It may be suggested that the phrase "family automobile" is ambiguous and that the defendant meant no more by it than if he had said that he bought and maintained the truck to help in the support of his family. It is also arguable, however, that he intended to convey what many might assume to be the common meaning of the words, that is, an automobile kept for the convenience and pleasure of the members of the family. The court cannot determine that question, for it goes to the effect of the evidence and of this the jury are the exclusive judges. ORS 17.250. In any event, it would not be unreasonable for a jury to conclude that the defendant's testimony on the trial of this case as to the use of the truck and the purpose for which it was maintained was inconsistent with the interpretation that a person of ordinary intelligence would place upon the expression "family automobile." That is to say, a jury might reasonably decide that a pick-up truck to which the defendant had the only

key and which was driven exclusively by him in connection with his work, except on rare occasions when his wife drove it at his request to do errands for him, was not a family automobile in the sense that the defendant used that expression in the Marion county trial.

The statement was not necessarily inconsistent with the defendant's testimony that Lonnie Rogers got possession of the pick-up truck surreptitiously on the particular occasion and drove it without the defendant's permission; but since the jury had the right to believe that the defendant had taken inconsistent positions with respect to a material and important part of his testimony they would have been justified in entertaining "different views" as to the whole of it.

Another reason which the jury might have had for viewing the defendant's testimony with skepticism was the failure of his attorney to question either Mrs. Rogers or Lonnie Rogers about the matter now under consideration. Mrs. Rogers must have known whether her husband had the only key to the pick-up truck and what use was made of that vehicle and, particularly, whether Lonnie was ever permitted to drive it. Lonnie certainly knew whether he was permitted to drive the truck at any time or on the occasion in question and, presumably, he was the only witness who could have testified whether he gained access to the garage by removing its door, and, if he did not have a key to the car, concerning the means he used to start the motor. One would have thought that there would have been some curiosity on the part of counsel as to the time of night when Lonnie took the car and where he had driven it and what he had done between that time and 4:30 in the morning. Counsel for the defendant did ask Lonnie Rogers where he

had been, but on receiving the answer that he had been over to "that kid's house" and was "messing around" he dropped the subject and counsel for the defendant did not pursue it. Ordinarily, in a case where the family car doctrine is involved and the question of driving without the consent of the owner is at issue, an inquiry into such matters is deemed material.

■ Lonnie's deposition was taken by the defendant. In his examination questions of the sort suggested above seem to have been studiously avoided by counsel for both sides. In this regard, the case is extraordinary. Without intending criticism of anyone, it seems to us fair to say that the record reads in part as though counsel were engaged in playing some kind of a game, instead of trying a lawsuit before a jury which should have had the benefit of all the available relevant evidence. It is to be remembered, however, that the defendant was faced with a prima facie case and had the burden of going forward with the evidence to meet and overcome it; and while the jury may have been as puzzled as this court is by the course pursued by counsel, they could rationally have drawn inferences unfavorable to the defendant from the latter's omission to elicit the testimony of Mrs. Rogers and her son on this crucial issue.

■ Although, as we have indicated, the evidence made a case for the jury, we have concluded that the judgment must be reversed for an error in instructions. No exception was taken by the defendant to the instructions in question nor is the error assigned in his brief. Nevertheless, we consider it our duty to notice the error under Rule 46 of the rules of this court which reads:

"In appeals in actions at law no alleged error

of the circuit court will be considered by this court unless regularly assigned as error in the appellant's opening brief, except that this court reserves the right to take notice of an error of law apparent on the face of the record."

The instructions given by the court on the "family purpose" doctrine were as follows:

"The plaintiff has alleged that the automobile driven by Lonnie Rogers was owned by the defendant, Joseph Rogers, and was maintained for the family use and purpose. The plaintiff contends that by reason of these alleged facts, the defendant, Joseph Rogers, is responsible for the acts and conduct of Lonnie Rogers. I instruct you that when an automobile is owned or maintained by a parent for the pleasure and convenience of the parents, family or any member of their family, the parent maintaining or owning such an automobile is responsible for the negligence of any member of the family who is using such automobile for their own pleasure or convenience.

"In determining whether or not the father, Joseph Rogers, is liable to the plaintiff, you are also instructed that merely because one is the father of a son who has been in an accident is not sufficient to hold the father liable. A parent, as such, is not responsible for the negligence of his children. He can, of course, be responsible not merely because of his being a parent, but because of his ownership of the automobile, as I have previously instructed."

■ It is not the law that a parent who maintains an automobile for the pleasure and convenience of members of the family is responsible for the negligence of a member of the family who is using such automobile for his own pleasure and convenience. He is only responsible if the car is driven by a member of

his family with his knowledge and consent. We said in *Steele v. Hemmers, supra:*

"*\* \* \** It may also be stated that, if the automobile was being driven on the night in question by the son for purposes of his own without the express or implied consent of the defendant, the latter would incur no liability by reason of his son's negligence. \* \* \*" 149 Or at 384.

See, also, *Wiebe v. Seely, Administrator, supra,* 215 Or at 348; *Gossett v. Van Egmond, supra,* 176 Or at 143-144; and the annotations previously cited entitled "Car taken surreptitiously or in violation of orders", 64 ALR 870, 88 ALR 612, 100 ALR 1026, 132 ALR 988.

■ Whether Lonnie Rogers on the occasion in question took the pick-up truck surreptitiously and without his father's knowledge or consent was a critical issue in the case. Yet the instructions authorized the jury to return a verdict against the defendant without a finding on that issue or even though they should find that it was taken against his father's wish and command and by breaking into the garage at a late hour of the night. In view of the entire evidence, it would not be in the interest of justice to ignore this misdirection of the jury on a question of such fundamental importance to a correct decision of the case.

In the defendant's brief it is suggested that the amended complaint does not state a cause of action because it does not allege that the car was driven by Lonnie Rogers pursuant to the family purpose, citing *Commonwealth of Kentucky v. Maryland Casualty Co.* (6th Cir. 1940), 112 F2d 352 at 356, and *Messer v. Reid et al.,* 186 Tenn 94, 97, 208 SW2d 528 at 529. See, also, 61 CJS 173, Motor Vehicles § 505; Annota-

tion 93 ALR 991. In *Messer v. Reid et al.,* supra, it is said:

"* * * The cases are uniform in holding that to state a cause of action under the circumstances against Mrs. Wallace Reid as head of the family under the family purpose doctrine, it was necessary to allege that Kaisi was not on a private mission in his own interest, but was on a mission for the business, convenience or pleasure of the head of the family, Mrs. Reid, or while the son was a passenger in the car. * * *" 186 Tenn at 97.

The allegations of the amended complaint in this regard are merely that the defendant was the owner of the automobile and "that said automobile was owned by the defendant and maintained for family purposes."

In our opinion, while this is a defective complaint and is subject to demurrer, it should be deemed sufficient after verdict.

For the error in instructions the judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.