Argued and submitted October 29, 1979, affirmed in part,
reversed in part and remanded May 19, 1980

YUNKER,
*Appellant,*
*v.*
KAISER FOUNDATION HEALTH
PLAN OF OREGON, et al,
*Respondent.*

(No. A77 11 16099, CA 12870)

611 P2d 314

J. Robert Jordan, Portland, argued the cause for appellant. With him on the brief was Francis F. Yunker, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondent. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Schwab, Chief Judge, and Buttler and Roberts, Judges.

BUTTLER, J.

**BUTTLER, J.**

This is an action for damages for breach of contract and for medical malpractice arising out of an alleged failure to diagnose plaintiff's gallbladder condition. The complaint alleges two causes of action, and at the close of plaintiff's case the circuit court granted defendants' motions for a nonsuit on both causes. Plaintiff appeals from the ensuing judgment entered in favor of both defendants. On review, we conclude that there was sufficient evidence to present a jury question as to the Clinic's negligence, and therefore reverse as to that cause of action. In all other respects we affirm.

Plaintiff sued both the Kaiser Foundation Health Plan (Kaiser), which operates a health insurance program, and the Permanente Clinic, which is a partnership operating a health service. In her contract cause of action, plaintiff alleged that during the relevant time period she was a member of the Kaiser plan, that Kaiser contracted to furnish "all medical or hospital services required for [her] health care," and that Kaiser breached its contract by failing to provide and pay for gallbladder treatment and surgery which plaintiff needed while covered by the plan.

For the purpose of analysis it is convenient to discuss plaintiff's negligence cause of action against the Permanente Clinic first. Her theory was that when she visited two Permanente facilities in December, 1976, she was suffering from gallstones, that the physicians who treated her failed to diagnose that condition, and that the physicians were negligent in not arranging for diagnostic tests which would have revealed the problem. She further alleged that if her gallbladder condition had been discovered in December, 1976, she would have undergone surgery at that time while her Kaiser coverage was in force; it expired in March, 1977. As a result of the negligent failure to diagnose, she alleged she had to pay for her own medical and surgical costs when her gallbladder was

removed in August, 1977, and that the delay subjected her to continued pain and suffering, to her damage.

We review the evidence "in the light most favorable to plaintiff," *Thompson v. Industrial Lumber Co.,* 41 Or App 519, 521, 599 P2d 468, *rev den* (1979), to determine whether there is sufficient evidence from which, if believed, a jury could find for her. *James v. Carnation Co.,* 278 Or 65, 70, 562 P2d 1192 (1977).

> "* * * It is * * * fundamental * * * that in determining whether to withdraw an allegation from consideration by the jury it is not the function of the court to weigh conflicting evidence and if an allegation is supported by any substantial evidence, including the testimony of a single witness, it is the exclusive function of the jury to decide whether or not to believe that testimony, despite the fact that all other witnesses may have testified to the contrary." *Hansen v. Bussman,* 274 Or 757, 763, 549 P2d 1265 (1976) (footnote omitted).

Viewed in that light, the evidence may be summarized as follows: On December 13, 1976, while covered by the Kaiser Foundation Health Plan, plaintiff made emergency visits to two Permanente facilities. On both visits plaintiff complained of acute abdominal pain.

The first doctor who saw plaintiff advised her that she probably had "heartburn." He prescribed an antacid, and arranged for plaintiff to have upper G. I. x-rays. Plaintiff had a second attack of acute abdominal pain later that same day and made another emergency visit to a second Permanente facility. The second doctor told her that she had stomach flu, and prescribed medication for that problem.

Neither physician took a medical history from the plaintiff. Thus, neither doctor learned that a few years earlier plaintiff had seen a physician in Chile who took a gallbladder x-ray and diagnosed a possible gallstone.

A few days after the December 13 visits, plaintiff had the upper G. I. x-rays taken. They were normal. During the remaining term of her Kaiser coverage, plaintiff did not seek any further treatment for abdominal pain. The first physician who saw plaintiff on December 13 suggested, according to plaintiff, that she "follow up" on the problem only if she had further pain.

Plaintiff had no further problems while covered by Kaiser and did not experience any abdominal pain between December, 1976, and June, 1977. In June, she suffered some slight abdominal discomfort; during that summer, her pain increased in both severity and frequency. In August, 1977, plaintiff returned to a Permanente clinic where she saw an internist.

That doctor took a medical history whereby he learned of the Chilean doctor's diagnosis. The internist scheduled a variety of tests for the plaintiff, including a gallbladder x-ray. However, at this point, no longer being under Kaiser coverage, plaintiff decided to contact another physician. She then saw Dr. Goldman, a gastroenterologist, who ordered a gallbladder x-ray, which revealed gallstones. Several days later plaintiff had another attack of severe pain. She called Dr. Goldman and her gallbladder was removed that day.

Dr. Goldman testified that the need for a gallbladder x-ray "would have been indicated" by plaintiff's symptoms on December 13, 1976. He believed "that someone presenting with this kind of story should have further x- rays * * * and the x-rays should include a gallbladder x- ray." Dr. Goldman expressed the opinion that the "ordinary diligent doctor" would have concluded that a gallbladder x-ray was necessary.

It is undisputed that plaintiff had the condition on December 13, 1976, that the Permanente physicians did not diagnose the problem, and that a gallbladder x-ray would have revealed plaintiff's gallstones.

[169]

The foregoing evidence, if believed, is sufficient to present a jury question as to whether the Clinic was negligent in failing to diagnose plaintiff's gallstones prior to the expiration of her coverage by the Kaiser plan.

The trial judge granted defendants' motion for non-suit, in part, because he concluded that plaintiff had failed to show the need for 'immediate' surgery, or for surgery before the expiration of plaintiff's Kaiser coverage in March, 1977.[1] Again, however, there is evidence, although meager, from which the jury could conclude that the need for surgery was sufficiently immediate that plaintiff would have undergone surgery prior to the expiration of her Kaiser coverage had it been recommended.

Dr. Goldman testified that when gallstones are diagnosed, "surgical therapy is indicated" that while the precise timing of surgery may vary with the patient and the particular symptoms, removing the gallbladder will prevent further attacks of pain and complications, such as a gallstone entering the common bile duct, which was determined to be the case when Dr. Goldman operated in August, 1977.

A jury could have reasonably inferred from Dr. Goldman's testimony that when gallstones are diagnosed, the patient should be told that surgery is indicated and given some choice over the timing of

---

[1] Defendants rely on *Horn v. National Hospital Association,* 169 Or 654, 131 P2d 455 (1942). *Horn* also involved a negligent failure to diagnose a gallbladder condition, but *Horn* is distinguishable. In *Horn,* the court held that the plaintiff's evidence did not present a jury question as to the "immediate" need for surgery. The court observed that there the plaintiff's evidence "not only fails to support [the] allegation, but it affirmatively discloses the contrary. * * * No witness * * * testified that immediate removal of the gall bladder was necessary or *advisable* at that time. * * *" 169 Or at 672. (Emphasis supplied.) The plaintiff in *Horn* had appendicitis, as well as a gallbladder condition. The evidence indicated that plaintiff's appendicitis needed to be treated before her gallbladder condition. In addition, the plaintiff in *Horn* did not testify that she was willing to undergo gallbladder surgery. She had fled the hospital before her appendectomy.

surgery. Since the physicians did not diagnose plaintiff's gallstones in December, 1976, she was not given that choice. Plaintiff's Kaiser coverage did not end until March, 1977, and she testified that she would have consented to surgery had she been advised of the situation. Because the Permanente physicians failed to diagnose the gallstones while plaintiff was still covered by Kaiser, plaintiff was not given the choice of having the surgery before the coverage ended. When she had the surgery, plaintiff had to pay the medical and hospital expenses herself.

It follows that the trial court erred in granting the defendant clinic's motion for nonsuit on the negligence cause of action and we reverse the judgment for the clinic on that cause.

However, we affirm the judgment in all other respects. The nonsuit on the negligence cause of action against Kaiser was granted on the ground that plaintiff had not shown that Kaiser was vicariously liable for the clinic's negligence. First, it is not clear that plaintiff intended to assert negligence against defendant Kaiser. Apart from the allegation that Kaiser is a corporation operating a health insurance plan within this state, Kaiser is nowhere mentioned in the negligence cause of action. The complaint simply alleges the Clinic's negligent failure to diagnose and the consequent damages.

The complaint contains no facts from which a relationship between Kaiser and Permanente, creating vicarious liability, can be inferred. *See Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966); *Kraxberger v. Rogers,* 231 Or 440, 373 P2d 647 (1962); *Downs v. Nat. Share Corp.,* 152 Or 546, 55 P2d 27 (1936). The trial court did not err in sustaining defendant Kaiser's motion for nonsuit on the negligence case of action.[2]

[2] The only evidence as to the relationship between Kaiser and the Clinic is contained in the contract between plaintiff and Kaiser. That

On the cause of action for breach of contract, plaintiff alleged that "the defendants failed and refused to provide the said surgery and care as provided by their medical insurance program." Under the Plan agreement, Kaiser was obligated to provide services and benefits which were "prescribed or directed by a physician" associated or engaged by the Clinic. The evidence is that no such physician prescribed gallbladder surgery or treatment because they failed to diagnose the problem. Under the allegations of the complaint and the evidence Kaiser did not breach its agreement, and the nonsuit as to it was properly granted.[3]

As to the Clinic, it was not a party to the agreement and the trial court properly ruled there was no evidence of a breach of contract by the Clinic. Its liability, if any, is for malpractice in failing to diagnose her problem while she was a member of the Plan.

Affirmed in part, reversed in part and remanded.

---

contract defines "medical services" as "professional services of licensed medical doctors and para-medical personnel" which are "performed, prescribed or directed by Physicians." "Physicians" in turn is defined as any doctor associated with the Clinic. However, the contract also provides that the relationship between the plan and the clinic is "an independent contract relationship." There is no allegation that Kaiser was negligent in selecting the Clinic.

[3] Although the agreement only obligates Kaiser to provide services and benefits "prescribed or directed by a physician" associated or engaged by the Clinic, it is apparent that before any particular medical procedure may be prescribed or directed, there must be a diagnosis. Because the agreement requires, with certain exceptions not here relevant, that the procedure be prescribed by the Clinic, it must follow that the diagnosis must be made by the Clinic. Given those requirements, the question might be different if plaintiff alleged that Kaiser agreed to provide competent medical diagnostic services and failed to do so here. She did not do so.