Ricardo ARIZPE,
personal representative of the Estate of
Adolfo Arizpe-Medel
and Henry James,
personal representative of the Estate of
Meylin L. James,
*Appellants,*

*v.*

Jerry Franklin VANKIRK
and American Standard Insurance Company of Wisconsin,
dba American Family Insurance Group,
*Defendants,*

*and*

Richard W. Bogart
and Mary M. Bogart,
*Respondents.*

0401-00806; A127161

129 P3d 718

Randall J. Wolfe argued the cause and filed the briefs for appellants.

Steven D. Hallock argued the cause for respondents. With him on the brief was the Law Office of John E. Snarskis.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs, representing the estates of two people killed in an automobile accident, brought this wrongful death action against Vankirk, who was the driver of the other automobile involved in the accident, and against his parents, the Bogarts.[1] Plaintiffs asserted that the Bogarts were liable under the "family purpose doctrine." The Bogarts and plaintiffs filed cross-motions for summary judgment on that issue. The trial court granted the Bogarts' motion and entered a limited judgment dismissing plaintiffs' claim against them. Plaintiffs appeal, and we affirm.

Although the parties disagree about the legal significance of the facts, there is no dispute as to what those facts are. We therefore review to determine whether either party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Barber v. George*, 144 Or App 370, 372-73, 927 P2d 140 (1996), *rev den*, 324 Or 560 (1997). In this case, that inquiry focuses on the "family purpose doctrine," under which, in certain circumstances, the court may impute vicarious liability to the owner of a car for the negligence of a family member. The doctrine "is based upon the theory that when an automobile is maintained by the owner for the pleasure or convenience of his family, a member of the family who uses it * * * with the knowledge and consent of the owner is the agent of the owner and the latter is responsible for his negligence." *Kraxberger v. Rogers*, 231 Or 440, 450, 373 P2d 647 (1962); *accord Barber*, 144 Or App at 373. Whether the family purpose doctrine applies in a particular case depends on who owns the car. *Barber*, 144 Or App at 374 (under Oregon law, application of family purpose doctrine "require[s] a showing of ownership").

Ownership is a question of fact. *Fisher v. Pippin*, 40 Or App 421, 423, 595 P2d 513 (1979). In the present case, Vankirk, and not his parents, owned the Volkswagen Jetta that Vankirk was driving at the time of the accident. It was

---

[1] Respondent Richard Bogart is Vankirk's stepfather and respondent Mary Bogart is his mother. We refer to them throughout as "the Bogarts" or Vankirk's "parents."

titled in his own name, insured under his own policy, and used exclusively by him. At the time, Vankirk was 29 years old and living with his parents; they had made the down payment and subsequent installment payments on the car, and they paid the insurance premiums. Vankirk occasionally gave money to the Bogarts for various expenses that they paid on his behalf, but those payments were not earmarked as reimbursement for particular items, and the Bogarts did not have a security interest in the car. Both Vankirk and his parents considered the car to be Vankirk's property.

Ten years before the accident, Vankirk's driver's license was suspended due to a conviction for driving under the influence of intoxicants. Subsequently, when Richard Bogart discovered that Vankirk had been driving despite the suspension, he disabled Vankirk's car by removing the wheels. That car was one that Vankirk previously owned, not the Jetta that he drove in the collision that gave rise to this case. In response to a question intended to demonstrate that Vankirk's parents presently exercised control over whether he could use the Jetta, Richard Bogart testified at his deposition that if, at the time of the present accident, he had known that Vankirk had been under the influence of alcohol—a purely hypothetical situation, since there was no evidence that alcohol was involved in the collision—he would have tried to prevent Vankirk from driving by taking his keys away.

Plaintiffs argue that because the Bogarts made car and insurance payments, provided housing and financial assistance, caused Vankirk to refrain from driving a different car when his license was suspended in the past, and stated that they would presently take his keys away if he tried to drive while drunk, they had beneficial ownership of the Jetta, and liability for Vankirk's negligence should be imputed to them under the family purpose doctrine. We disagree.

The certificate of title to a vehicle provides *prima facie* evidence of ownership. ORS 802.240(1); *Wisbey v. Nationwide Mut. Ins. Co.*, 264 Or 600, 602, 507 P2d 17 (1973). The car was titled in Vankirk's name. *Prima facie* ownership cannot be overcome by the fact that the car is a gift. *Barber*,

144 Or App at 373-74 (summary judgment on basis that family purpose doctrine did not apply was appropriate where son was title owner of car given by parents). Nor can it be overcome merely because the car was purchased with an unsecured loan. "A loan to purchase property, absent some agreement designating the property as collateral and giving the lender rights in the collateral upon default, does not give rise to any interest in the property." *City of Pendleton v. One 1998 Dodge Stratus*, 180 Or App 72, 79 n 11, 42 P3d 339 (2002).

Evidence of control over the use of the vehicle may serve as an indication that someone other than the title owner has an ownership interest as the "beneficial" owner of a car. *Barber*, 144 Or App at 373-74; *see also Wisbey*, 264 Or at 603. In this case, however, only Vankirk drove the car, and both Vankirk and the Bogarts shared a good faith belief that the car was Vankirk's. The record contains no evidence that the Bogarts exerted "control over the use of" Vankirk's Jetta. It discloses only that, ten years before the accident at issue here, Richard Bogart had removed the wheels from a car that Vankirk previously owned. That fact is not relevant to the issue of whether he had an ownership interest in the Jetta.

The record also includes Richard Bogart's statement that if Vankirk were intoxicated and wanted to drive, he would withhold Vankirk's keys, and Vankirk would comply:

"Q [by plaintiffs' counsel]: If you had caught him drinking and driving, say in June 2003, would you have thought about chaining up his car again?

"A [by Bogart]: No. I would have taken his keys away if I thought he was drunk.

"Q: You think he would have respected that decision?

"A: Yes.

"* * * * *

"Q: Just to clarify, when I said, 'Do you think he would have respected that decision,' I mean, do you believe that he would have listened to you and allowed you to keep his keys for some period of time?

"A: Yeah."

That speculation does not show that Bogart held an owner-ship interest in the Jetta despite Vankirk's status as title owner; it indicates only that, hypothetically, Bogart would attempt to prevent Vankirk from engaging in dangerous or unlawful behavior and that, also hypothetically, Vankirk would respond favorably to the intervention. It indicates, if anything, an assertion of control over Vankirk, not over his possessions.

Affirmed.